### PEOPLE *v.* WILLIAMS.

1. CRIMINAL LAW—ASSAULT WITH INTENT TO DO GREAT BODILY HARM—SUFFICIENCY OF EVIDENCE.

    A conviction under respondent's own testimony might properly be had, in a prosecution for assault with intent to do great bodily harm less than murder, where such testimony is to the effect that he, with no reasonable provocation, knocked the complainant down and kicked him in the head several times, and repelled with a knife the efforts of bystanders to interfere.

2. SAME—CONTINUANCE—JUROR AS WITNESS.

    A continuance on the ground that one of the jurors for that term of court was one of the *res gestæ* witnesses for the prosecution, and that his name was indorsed on the information, was properly refused, where those jurors called upon the panel who were acquainted with him stated that such acquaintance would not bias their minds.

3. SAME—NEW WITNESSES—INDORSEMENT ON INFORMATION—CONSENT OF COUNSEL.

    One week before a criminal cause was brought on for trial, the prosecuting attorney called one of respondent's counsel to the rooms of the judge of the court, and stated that he proposed to indorse upon the information the names of certain additional witnesses. Counsel made no objection at the time, but, after consulting with the other counsel, moved the court to strike off the names. *Held,* that in view of 2 How. Stat. § 9549, provid

ing that the prosecutor may, at such time before the trial as the court may prescribe, indorse the names of additional witnesses, the court was justified in denying the motion, notwithstanding no showing had been made as to when the prosecutor became cognizant of the fact that such witnesses were material to the prosecution.

4. SAME—RULING NOT PREJUDICIAL.
One accused of an assault is not prejudiced by the court's re. fusal at the trial to have indorsed on the information the name of an alleged witness, whose presence is denied by the other witnesses, and whose deposition thereafter introduced in his behalf alleges that she ran away after seeing him strike complainant.

5. SAME—JURORS—PREJUDICE.
A juror is not disqualified to sit on a trial for assault, because he sat in a case in which the proprietor of the house in which respondent boarded was charged with keeping a house of ill fame, where he states that he has no opinion or prejudice on the question of the guilt or innocence of the respondent, nor any prejudice that would in any way affect his credit upon the stand as a witness.

6. SAME—EVIDENCE—SELF-DEFENSE—INSTRUCTIONS.
Refusal to charge the jury on a trial for assault, that, if the respondent acted in self-defense, they must acquit, is not error, where there was no testimony in the case to warrant such a charge, and the jury might properly have convicted the accused upon his own testimony.

Error to superior court of Grand Rapids; Burlingame, J. Submitted November 18, 1898. Decided December 6, 1898.

George Williams was convicted of assault with intent to do great bodily harm less than the crime of murder. Conviction affirmed.

*Nathan P. Allen* (*Brown & Adams*, of counsel), for appellant.

*Fred A. Maynard*, Attorney General, *Frank A. Rodgers*, Prosecuting Attorney, and *Benn M. Corwin*, Assistant Prosecuting Attorney, for the people.

LONG, J. Respondent was convicted in the superior court of Grand Rapids of an assault upon one Frank Daley, with intent to do him great bodily harm less than the crime of murder. The information was filed under section 9122*a*, 2 How. Stat. It appears that the respondent was convicted of a misdemeanor under a former complaint made by Daley, the complaining witness in the present case. That case came to this court, and was affirmed. *City of Grand Rapids* v. *Williams*, 112 Mich. 247. The case being remanded with directions to proceed to judgment, Williams was sentenced to 90 days' imprisonment in the county jail, his term expiring about July 1, 1897.

The testimony in the present case introduced by the prosecution shows that, on the 4th of August following his release, respondent was fishing in Grand River from a footbridge, when Daley, in company with a Mr. Bennett, crossed the bridge. Daley passed the respondent some feet, and stopped to talk with a Mr. Ten Hopen. After some conversation, Daley asked Ten Hopen, "What are they fishing with,—worms?" At this respondent said, "Who are you talking to,—me?" Daley responded, "No; to this gentleman." Respondent then said, "I thought you would have a lot of gall to speak to me;" adding some profane words. Daley responded, "I am not talking to you," and started to go away, when respondent ran up behind him, knocked him down, and kicked him eight or ten times on the head. Mr. Bennett started to separate them, when respondent took out a knife, and struck at him, and said, "I will stick this into you." Bennett retreated, when respondent again knocked Daley down, and again kicked him. Daley finally got up, and started to run across the bridge, but was followed up by respondent, who overtook him, knocked him down again, kicked him, at the same time striking at him with a knife, and cutting a gash in his finger three-fourths of an inch in length, and saying to him, "You made me serve 90 days in jail, and I will cut your —— white heart out." Mr. Bennett

then called others who were passing by to come and help him, when the respondent turned, and ran back across the bridge. On his return across the bridge, he stated to a Mr. Moon that he would kill Daley if he had to follow him to his house to do it. Daley was badly injured, and confined to his house for some two weeks or more.

The respondent was called as a witness in his own behalf. His testimony does not vary materially from the other witnesses as to what occurred, though he denies having used the knife on Daley. He does admit, however, that he drew it on Bennett, and that he knocked Daley down, and kicked him, as described by the witnesses for the prosecution. Under his own testimony, the jury might properly have found the respondent guilty of the offense charged.

Six errors are assigned by counsel for respondent:

1. A continuance was asked by respondent, for the reason that Mr. Bennett, one of the jurors for that term of court, was one of the *res gestæ* witnesses for the prosecution, his name being indorsed on the information. This was denied. It appears that Mr. Bennett was on the bridge, and present at the time of the assault by respondent. The jurors, when called upon the panel, were fully examined, and were each shown to be qualified to sit. They were asked about their acquaintance with Mr. Bennett. Some of them had no acquaintance whatever with him, and those who knew him stated that such acquaintance would in no wise bias their minds. The mere fact that Bennett was returned as a juror for the term did not prejudice the rights of the respondent, though Bennett was one of the witnesses to be called in the case. If continuances are to be granted because some of the jurors are acquainted with the witnesses for the prosecution, it would be difficult to bring criminal cases on for trial at any term. There is no such rule as contended for. The matter of continuance rested in the discretion of the court, and there was no abuse of it here.

2. The trial of the cause was commenced on January

17, 1898. It appears that on January 10th the prosecuting attorney indorsed the names of two witnesses on the information. Before doing so, he called one of the counsel for the respondent to the rooms of the judge of the court, and stated to him that he proposed to so indorse the names. Counsel made no objection at the time, but thereafter, on consultation with the other counsel, objection was made, and the court was asked to strike these witnesses' names from the information. This was refused. Section 9549, 2 How. Stat., provides that the prosecuting attorney shall indorse on all informations the names of the witnesses known to him at the time of filing the same; and, at such time before the trial of any case as the court may by rule or otherwise prescribe, he shall also indorse thereon the names of such other witnesses as shall then be known to him. We think the statute was complied with. The names were indorsed seven days before the trial commenced. It is true that no affidavit was filed showing the time when the prosecuting attorney became cognizant of the fact that such witnesses were material for the prosecution; but, when their names were indorsed, counsel for respondent made no objection. The names could have been indorsed after the trial commenced, without the showing, if consented to by counsel for respondent. The court very properly refused to strike them off. *People* v. *Howes*, 81 Mich. 396.

3. During the trial, the respondent asked to have the name of one Dora Gardner indorsed on the information. This the court refused, and exception was taken. On motion for new trial, the same point was pressed, and the court said, in refusing the new trial:

"The prosecuting attorney stated that he had no knowledge of any such person as Dora Gardner being present, and that he had several witnesses who swore that no such woman, nor any woman, was present at the time of the assault, and the court doubts of her being there at all. This Dora Gardner was used originally to try to get this case over the term, and finally, failing in this, she was

used as a witness for respondent by deposition, which could not have been if she had been the people's witness, so that the fact that her name was not on the information redounded to the respondent's advantage."

In addition to this, it appears from the testimony of Dora Gardner that all she saw was that respondent struck Daley, when she ran away from the scene. Under the circumstances, the respondent was not prejudiced by the prosecution's failure to indorse the name of this witness on the information.

4. It is claimed that the court was in error in not sustaining the challenge for cause made against the jurors John Muir and Cornelius Kelley. It appears that the case of People against Eliza Conway was tried in that court a few days before the case against respondent was called. Eliza Conway was charged in that case with keeping a house of ill fame. It was shown that respondent and Dora Gardner boarded at the Conway house. The above-named jurors were on the panel for the trial of the Conway case, and testimony was given on that trial as to the character of the house kept. These jurors were asked in the present trial whether they had any opinion, bias, or prejudice at all on the question of the guilt or innocence of the respondent on the charge he was being tried upon, or any prejudice against him that would in any way affect his credit upon the stand as a witness. They answered, "Not in the least." The court, in its sound discretion, overruled the motion to reject these jurors for cause. It was said in the case of *People* v. *Thacker*, 108 Mich. 654:

"It has been repeatedly held in this State, and may be regarded as the well-settled law, that one is not disqualified from serving as a juror simply because he has heard and read about the case, and has formed an impression based upon what he has heard and read, if the impression is not of that fixed character which repels the presumption of innocence."

And in *People* v. *Barker*, 60 Mich. 287 (1 Am. St. Rep. 501), it was said:

"The opinion entertained by a juror which disqualifies him is an opinion of that fixed character which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already."

In the present case the jurors had no fixed opinion whatever, and, in fact, stated they had no bias or prejudice against respondent. The mere fact that they sat in another case, in which another party was charged with immorality, and that the respondent was an inmate in that house, did not disqualify them to sit in the present case. It was not error to overrule the motion to discharge for cause.

5. Counsel for respondent substantially asked the court to charge the jury that, if they found that respondent was acting in self-defense, they must acquit. There was no testimony in the case which would warrant such a charge; and, as we have before stated, the jury might properly have convicted the respondent upon his own testimony.

This, in effect, covers the remaining assignment of error.

We find no error in the case, and the conviction must be affirmed.

The other Justices concurred.