PEOPLE v HOSKINS

Docket No. 58137. Decided July 17, 1978. On application by defendant for leave to appeal the Supreme Court, in lieu of granting leave to appeal, reversed the decision of the Court of Appeals and remanded to the trial court for further proceedings.

James E. Hoskins was convicted by a jury in Genesee Circuit Court, Ollie B. Bivins, Jr., J., of second-degree murder. The defendant argued that the killing was done in self-defense, and testimony by one of the witnesses, which was read from the transcript of the preliminary examination because he was unavailable for the trial, concerned a confrontation between the defendant and the victim before the shooting in which the victim was the aggressor and the defendant had withdrawn. The defendant did not testify on his own behalf but made a timely request for an instruction to the jury on self-defense. The trial court ruled that insufficient evidence had been presented to justify the instruction. The court also stated that the defendant would have to testify as to his state of mind at the time of the killing in order for the court to give the self-defense instruction. The Court of Appeals, T. M. Burns, P.J., and V. J. Brennan and M. F. Cavanagh, JJ., affirmed in an unpublished per curiam opinion (Docket No. 21211). Defendant applies for leave to appeal. *Held:*

There was evidence presented in this case pointing to the conclusion that the defendant had acted in self-defense. The sufficiency of that evidence was for the jury to determine under proper instructions. The right to assert a theory of self-defense is not contingent on a waiver of the privilege against self-incrimination.

The decision of the Court of Appeals is reversed and the case is remanded to the trial court for further proceedings.

Justice Ryan, dissenting, would deny leave to appeal on the ground that under the court rules no delayed application for leave to appeal may be filed in the Supreme Court more than six months after the decision of the Court of Appeals. It is reasonable to calculate the period of delay in the instant case as running from the date upon which the trial court appointed appellate counsel. Even by that generous construction of the

court rule, the last day upon which a delayed application for leave to appeal could have been filed properly in the Supreme Court was February 13, 1977, not August 19, 1977. Obedience to the command of the Court's own rules mandates a denial of leave in this case. When the Court begins to demonstrate a willingness to vote obedience to the law as it governs the Court's own authority to review a case, corresponding obedience may be expected from the State Appellate Defender and others upon whom the rules are meant to be binding. Furthermore, appellate counsel, ignoring the requirement of the court rule that the application for a delayed appeal be accompanied by an affidavit reciting facts, filed an affidavit with the conclusory assertion that the delay was not due to the appellant's culpable negligence.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief Appellate Division, for the people.

State Appellate Defender (by *Kathleen M. Cummins)* for defendant.

PER CURIAM. Originally charged with murder, James E. Hoskins pled guilty of manslaughter over the prosecutor's objection in 1972. He received a 7-1/2 to 15-year prison sentence.

After a complaint was filed by the prosecutor's office, this Court, in *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115; 215 NW2d 145 (1974), granted an order of superintending control and remanded for trial on the information. A jury convicted defendant of second-degree murder on May 8, 1974, and he was sentenced seven weeks later to 20 to 35 years in prison.

Throughout the trial the defendant's attorney argued that the killing was done in self-defense. Defense counsel's timely request for an instruction on self-defense was denied by the trial judge, however, on the ground that insufficient evidence

had been presented to justify the requested instruction. The trial court added that it could not instruct the jury on self-defense unless the defendant had taken the stand and testified to his state of mind at the time the killing occurred.

The Court of Appeals, in an unpublished per curiam opinion which cited *People v Williams*, 118 Mich 692; 77 NW 248 (1898), affirmed because the panel found no evidence in the case to support a theory of self-defense.

We have considered the defendant's delayed application for leave to appeal and, pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, we reverse the Court of Appeals and remand the case to the trial court for further proceedings. Our careful review of the record discloses that there was evidence in this case pointing to the conclusion that the defendant had acted in self-defense; the sufficiency of this evidence was for the jury to determine under proper instructions on self-defense. The right to assert a theory of self-defense is, of course, not contingent on a waiver of the privilege against self-incrimination.

I

Testimony at trial revealed that the victim and the defendant were drinking with friends at Frederick Bridges' house when the victim asked the defendant to repay a seven-dollar debt. Defendant asked Victor Doan, another guest, to drive him to the home of defendant's mother to get money. Doan agreed to do so as soon as he finished his drink. The victim went to the bathroom and the defendant went outside to wait. The victim returned from the bathroom and went outside. Bridges and Doan both testified that they then heard a shot. Both men went to the window and

observed the victim staggering back against Doan's car. They both then observed the defendant fire a second shot at the victim.

Wayne Bachman, another guest at the party, stated that at the time of the shooting he and Tom Harrington were backing out of Bridges' driveway in Harrington's car, preparing to leave. Like Doan and Bridges, Bachman observed the second shot but was not in a position to observe what had happened between the defendant and the victim before the first shot was fired. The three witnesses, Doan, Bridges and Bachman, characterized the discussion between the victim and the defendant as a request for money rather than an argument, although Bridges was impeached with the testimony he gave at the preliminary examination two years earlier that the victim was raising his voice and was "hot under the collar" while requesting the seven dollars from the defendant.

Since Tom Harrington was found to be unavailable, his previous testimony at defendant's preliminary examination was admitted as an exhibit and read to the jury. Harrington described the discussion between the victim and the defendant as an "argument", not a "conversation". The argument prompted Harrington to leave because he did not want to be around if something "developed". The witness recalled the victim telling the defendant that he would "whip" the defendant.

Harrington was the only witness to the events leading up to the shooting other than the defendant, who did not testify, and the victim. Harrington said that as he and Bachman were leaving, he saw the victim advance toward the defendant "with his hands up" and that "the defendant stepped into him and right then I heard a shot". Harrington said that the two men were talking to

each other just before the shooting, but he could not hear what they were saying.

Defense counsel advanced his theory of self-defense from his initial voir dire of and opening remarks to the jury through his closing argument. Harrington's testimony, defense counsel argued, demonstrated that before the actual shooting, a potentially violent situation was building up between the defendant and the victim in which the victim was the aggressor. Defendant's reaction to this situation was conciliatory, and once outside the house the victim made the first move toward the defendant.

The trial court explained its denial of defense counsel's request for an instruction to the jury on self-defense in this way:

*"The Court:* * * * There is no question in my mind, I think he [defendant] should have taken the witness stand. I advised him of his rights. He chose not to. But I think that's a mistake that he made. He could have then developed the theory, and I would have instructed on the theory of self-defense had he taken the witness stand and given anything that I could use as a factual basis. And, that's why I denied your instruction on self-defense, because I could not make—I don't believe, as I stated before, you—you can utilize the self-defense without the defendant showing his state of mind and how he felt at the time, if he felt his life was in danger and he had no other choice but to take the life. And, absent that, I could not do it. But I just like to throw it in while I'm thinking about it."

Thus the trial judge found that there was insufficient evidence to justify giving the requested instruction, an insufficiency the trial judge apparently believed was created by the defendant's failure to take the stand and testify as to "his state of

mind and how he felt at the time [of the shooting]".

## II

If supported by the evidence, defendant's theory of the case must be given. See *People v Reed,* 393 Mich 342, 350; 224 NW2d 867 (1975); GCR 1963, 516.7, 785.1; and 1 Michigan Criminal Jury Instructions (Ann Arbor: Institute of Continuing Legal Education), ch 7, § 4, Commentary, pp 7-45–7-48. Here, there was some evidence of self-defense, as distinguished from the situation in *Williams* where there was no evidence of self-defense. The testimony of Tom Harrington supports the inference that the shooting was preceded by a potentially violent situation during which the victim was aggressive and the defendant was conciliatory, and that the defendant shot the victim as the victim moved towards him with his hands raised after the defendant had withdrawn from the site of the argument. The sufficiency of this theory was for the jury to decide under proper instructions on self-defense from the trial judge.

A defendant need not take the stand and testify in order to merit an instruction on self-defense. Because of the absence of direct evidence, the prosecutor in the instant case was forced to use circumstantial evidence in his attempt to prove that the defendant had the requisite state of mind at the time of the shooting to support a conviction of second-degree murder. Similarly, a defendant may show his state of mind by circumstantial evidence to establish that he acted in self-defense. A ruling to the contrary compromises a defendant's privilege against self-incrimination and his right to have the prosecutor prove beyond a reasonable doubt that he was not acting in self-de-

fense. See US Const, Am V; CJI 7:9:06. By refusing to instruct the jury on self-defense, the trial court deprived the defendant of his primary defense.

Reversed.

KAVANAGH, C.J., and WILLIAMS, LEVIN, COLE-MAN, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred.

RYAN, J. *(dissenting).* I dissent from the Court's decision to review the judgment of the Court of Appeals in this case and its consequent reversal of the defendant's eight-year-old conviction of manslaughter.

The record evidence is that the defendant shot and killed his victim, Stanley Bolds, on October 13, 1971. Charged with murder, the defendant was permitted to plead guilty to the lesser charge of manslaughter, albeit over the objection of the prosecuting attorney who wished to proceed on the murder charge. Following the plea of guilty of manslaughter and entry of a judgment thereon, the prosecuting attorney appealed the trial court's decision to allow the guilty plea to the lesser charge. After obtaining an unsatisfactory result in the Court of Appeals, the prosecutor succeeded in obtaining an order from this Court reversing the defendant's plea-based conviction and returning the matter for further proceedings. *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115; 215 NW2d 145 (1974).

On May 8, 1974, following a jury trial on the charge of murder, the defendant was convicted of second-degree murder and sentenced to serve 20 to 35 years in prison. Again appeal was taken to the Court of Appeals and on December 10, 1975 the second-degree murder conviction was affirmed in an unpublished per curiam opinion. Thereupon,

claiming indigency, the defendant requested the appointment of counsel for a further appeal to this Court. His request was granted and counsel was appointed on August 13, 1976.

It was not until 12 months later, on August 19, 1977, that appointed appellate counsel got around to filing, in this Court, a delayed application for leave to appeal the decision of the Court of Appeals.

The general court rule governing the time within which an application for leave to appeal from a decision of the Court of Appeals may be filed is GCR 1963, 853.2(1) which in relevant part provides:

"Application for leave to appeal to the Supreme Court shall be filed with the clerk of the Supreme Court within 20 days after mailing by clerk of the Court of Appeals of notice to counsel of entry of the order of the Court of Appeals or the denial of an application for rehearing timely filed."

On the record before us, the last day for filing an application for leave to appeal was December 31, 1975.

For cases in which the plain mandate of the foregoing rule is not met, subsection (3) of subrule .2 of Rule 853 authorizes limited delayed appeals in the following language:

"Delayed application for leave to appeal may be filed upon a showing by affidavit *of facts* that the delay was not due to appellant's culpable negligence *but no such application shall be filed later than six months after the decision of the Court of Appeals.*"

Plainly, two requirements must be met before a delayed application for leave to appeal may even

be filed in the Michigan Supreme Court, to say nothing of affording predicate for relief.

First, the application must be accompanied by an affidavit reciting *facts* that the delay was not due to the culpable negligence of the appellant and second, the application must be filed not later than six months after the decision of the Court of Appeals.

The appellant before the Court in the instant case has not complied with either of these conditions.

Ignoring the provision of subsection (3) of the rule which requires the filing of an affidavit of facts, the State Appellate Defender filed instead an affidavit containing no facts whatever, but merely the conclusionary assertion that the delay in filing the application was not due to the appellant's culpable negligence.

Further ignoring the command of the rule that "no such application shall be filed later than six months after the decision of the Court of Appeals", counsel for the appellant, nevertheless, filed the application for delayed appeal 12 months after the appointment of counsel by the trial court and 20 months after the decision of the Court of Appeals.[1]

In fairness to counsel from the State Appellate Defender's Office, it should be observed here that she is fortified in her disregard of our court rule

[1] Our court rules did not explicitly accommodate our practice, at the time here in question under then effective Administrative Order 1975-9, 395 Mich xliii, of appointing counsel for indigent criminal defendants for the purpose of preparing and filing applications for leave to appeal to this Court. Appellant should not, it is clear, be "charged with" the entire 20 months that elapsed between the decision of the Court of Appeals and the filing of the application for leave to appeal. Appellant's request for the appointment of counsel, filed with this Court on February 11, 1976, was not granted until July 14, 1976 and, as stated above, appointment was not made by the trial court until August 13, 1976. Here, *12* additional months passed before the application was filed.

by the consistent record of this Court similarly disregarding the court rule by refusing to enforce it in innumerable cases in years past, as well as today.

This Court, recognizing that justice delayed is justice denied for the people of this state as well as for the defendants in criminal cases, and presumably subscribing to the notion that all litigation should come to an end someday, adopted GCR 1963, 853.2(3) in language which directs unmistakably and unambiguously that no delayed application for leave to appeal may be filed in this Court more than six months after the decision of the Court of Appeals.

Since each of our rules is to be construed not only in accordance with the plain meaning of the words used, but insofar as possible in harmony with related rules, it is reasonable to calculate the period of delay in this case as running from the date upon which the trial court appointed appellate counsel at our invitation. As indicated, that was done on August 13, 1976. Consequently, even by that generous construction of the rule, the last day upon which a delayed application for leave to appeal could have been filed properly in this Court was February 13, 1977 and not August 19, 1977 as was the case.

The wisdom of a rule which fixes some day as the time after which an appeal may not be taken, and after which we shall not review untimely appeals, is no better illustrated than in this case.

The killing in question for which the defendant attempted to plead guilty the first time around is now 7-1/2 years old. When the case was brought to trial in May of 1974, the key witness for the prosecution, Tom Harrington, had disappeared and his preliminary examination testimony was the

best the prosecution had to use at trial. Now, four more years have passed. While it is unknown whether other witnesses have died, disappeared, or left the jurisdiction, it is clear that, even if available, they will be required to call upon eight-year-old memories of the events in question.

The wisdom and fairness of a third trial aside, it is clear that obedience to the command of our own rules mandates a denial of leave in this case. When we begin to demonstrate a willingness to vote obedience to the law as it governs our own authority to review a case brought here, we can begin to expect corresponding obedience from the State Appellate Defender and others upon whom our rules are meant to be binding.