# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

CALVIN COOLEY,

      Defendant-Appellant.

UNPUBLISHED
November 20, 2014

No. 317338
Wayne Circuit Court
LC No. 12-002697-FH

Before: O'CONNELL, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right from his convictions following a jury trial for three counts of assault with intent to do great bodily harm less than murder, MCL 750.84, one count of domestic violence, MCL 750.812, and one count of assault and battery, MCL 750.81. He was sentenced as a habitual offender, third offense, MCL 769.11, to concurrent prison terms of seven to 20 years' imprisonment for the three counts of assault with intent to do great bodily harm less than murder, and 93 days (time served) for the domestic violence and assault and battery convictions. We affirm.

This case stems from an altercation between defendant and Alicia Williams that occurred at the home of Ashley Rushin, where they were residing with Williams's son, Chalamar Cofeer. On the evening of March 1, 2012, Williams came home after collecting a tax-refund check, and defendant asked her if he could have three dollars. When Williams said she had spent all of her money, the two began arguing, and defendant confiscated a pair of her shoes. The altercation became physical at that point. Rushin said she asked defendant to leave, but that Williams got in defendant's face and hit him. Williams stated that they merely began "tussling" and denied hitting him first. Williams and defendant fell onto a bed during the altercation, and Rushin asked Cofeer to break them apart, which he did.

Rushin, Williams, and Cofeer each testified that after defendant and Williams were separated, defendant left the room, went into the kitchen, and then returned to attack them. Cofeer said he saw defendant grab a knife while in the kitchen. According to Rushin, defendant swung at her twice, cutting her fingers and temple. Williams said she tried to hide in a closet, but that defendant came after her and stabbed her multiple times in the back with a knife that she described as a butcher knife. Cofeer said he retreated to a bedroom for safety, but that defendant broke the door open, pointed a knife at him, and hit him on the right side of the head. Cofeer

-1-

said he had difficulty remembering what happened next, but that he left the home and ran for help, learning later that he was bleeding from his head and leg.

On appeal, defendant argues that the trial court abused its discretion in refusing to instruct the jury on his right to self-defense. We disagree. Instructional errors involving questions of law are reviewed de novo. *People v Guajardo*, 300 Mich App 26, 34; 832 NW2d 409 (2013). "[W]e review a trial court's determination whether a jury instruction is applicable to the facts of a case for an abuse of discretion." *Id*. A trial court abuses its discretion when it "chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id.*

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her. A defendant asserting an affirmative defense must produce some evidence on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense." *Guajardo*, 300 Mich App at 34-35 (citations omitted). Self-defense is an affirmative defense that legally "justifies otherwise punishable criminal conduct" if the defendant honestly and reasonably believes that he is in immediate danger of unlawful bodily harm and that use of a reasonable amount of force is necessary to avoid this danger. *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010) (citations omitted). The Self-Defense Act (SDA), MCL 780.971, *et seq*., codifies the common law rule. *Dupree*, 486 Mich at 708. MCL 780.972(2) provides that a person may defend themselves with less than deadly force under the following circumstances:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

MCL 780.972(1) provides the circumstances under which a person may use deadly force to defend themselves. "A defendant need not take the stand and testify in order to merit an instruction on self-defense," and "may show his state of mind by circumstantial evidence." *People v Hoskins*, 403 Mich 95, 100; 267 NW2d 417 (1978). "A ruling to the contrary compromises a defendant's privilege against self-incrimination and his right to have the prosecutor prove beyond a reasonable doubt that he was not acting in self-defense." *Id.*

Defendant argues that he was entitled to a self-defense instruction because there was evidence that Williams initiated the physical confrontation, prevented him from leaving the home, and was under the influence of alcohol and marijuana. Even accepting those facts as true, however, there remains an absence of evidence supporting the assertion that defendant reasonably believed his use of force was necessary to protect himself from immediate harm.

Notably, all three victims testified that after the initial physical altercation between defendant and Williams ended, defendant left the room and walked into the kitchen by himself before returning and attacking the victims. Thus, even if Williams initiated the physical altercation as Rushin stated, defendant removed himself from any threat of immediate harm by leaving the room, and there was no evidence supporting the conclusion that defendant was under

duress or fear of bodily harm when he returned and attacked the victims. Additionally, while defendant exhibited willingness to leave the home *before* the physical altercation occurred, there was no evidence that defendant was prevented from leaving the home or tried to leave after the physical altercation ended. Moreover, there was no evidence to support the conclusion that defendant's use of force was necessary. Although Rushin testified that Williams hit defendant first and was on top of defendant during the altercation, there was no evidence that she had a weapon in her possession or that she threatened defendant with great physical harm.

Our analysis is consistent with the Court's holding in *Guadjardo*. In *Guadjardo*, this Court affirmed a trial court's decision not to instruct the jury on self-defense. *Guajardo*, 300 Mich App at 44. The Court noted that "several physical and verbal altercations proceeded" the offense (these altercations did not involve the defendant), but at the time of the offense, the defendant was "not involved in a physical struggle with an intoxicated and armed individual." *Id*. at 41. In contrast, our Supreme Court in *Dupree* found sufficient evidence existed for a self-defense instruction where two men were wrestling, the victim was larger than the defendant, the defendant noticed the victim had a gun, the men struggled over the gun, and the defendant told the victim to stop before shooting. *Dupree*, 486 Mich at 709.

Accordingly, there was no evidence supporting the conclusion that it was necessary for defendant to use a knife to defend himself against any of the victims at the time he stabbed them, and the trial court correctly concluded that a self-defense instruction was unwarranted.

We also reject defendant's claim that he was denied his constitutional right to present a defense. Defendant was not entitled to a jury instruction on self-defense because he did not offer evidence to support a claim of self-defense. Therefore, defendant's constitutional rights were not violated by the trial court's refusal to give a self-defense instruction.

Affirmed.

/s/ Peter D. O'Connell
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood