# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

TRAHUAN SHINDELL ROBINSON,

       Defendant-Appellant.

UNPUBLISHED
November 29, 2016

No. 327268
Genesee Circuit Court
LC No. 13-034247-FC

Before: JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of assault with intent to commit murder (AWIM), MCL 750.83, and one count each of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, first-degree home invasion, MCL 750.110a(2), felon in possession of a firearm, MCL 750.224f, injuring an animal, MCL 750.50b, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to concurrent prison terms of 40 to 60 years for each AWIM conviction, 114 months to 20 years for the AWIGBH conviction, 2 to 10 years for the felon-in-possession conviction, and 14 months to 15 years for the conviction on injuring an animal, to be served consecutively to a term of 117 months to 20 years' imprisonment for the home-invasion conviction, along with a consecutive two-year term of imprisonment for the felony-firearm conviction. We affirm defendant's convictions, but remand for a *Crosby*[1] proceeding under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), relative to defendant's sentences.

## I. FACTS AND PROCEEDINGS

Defendant's convictions arose from his participation, along with his twin brother Jajuan Robinson, in an incident on October 30, 2012, in which defendant and Jajuan forcefully entered the home of Blakely Williams and shot several occupants and a dog. Jajuan's daughter had attended a social gathering at the house the night before, but she was thrown out of the house

---

[1] This is a reference to *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

-1-

after an altercation with other occupants. Jajuan's daughter claimed that she left her cell phone inside the house and that the occupants refused to return it.

The trial court denied defendant's request for a jury instruction on common-law self-defense. During trial, the court granted the prosecutor's requests to amend the information and modify the jury instructions with respect to the relevant definition of home invasion under MCL 750.110a(2). Defendant was charged with three counts of AWIM, each pertaining to a different victim. The jury convicted him of the lesser offense of AWIGBH with respect to one of the victims.

## II. SELF-DEFENSE

Defendant argues that the trial court erred in denying his request for a jury instruction on common-law self-defense. "Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007).

A defendant in a criminal proceeding is entitled to have a properly instructed jury consider the evidence against him. *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014). Jury instructions must include all elements of the charged crime, and must not exclude material issues, theories, or defenses if the evidence supports them. *People v Milton*, 257 Mich App 467, 475; 668 NW2d 387 (2003). "A defendant need not take the stand and testify in order to merit an instruction on self-defense." *People v Hoskins*, 403 Mich 95, 100; 267 NW2d 417 (1978). The self-defense theory may be based on "circumstantial evidence to establish that [the defendant] acted in self-defense." *Id*. Once a defendant injects the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden to prove beyond a reasonable doubt that the defendant's actions were not taken in self-defense. *People v Dupree*, 486 Mich 693, 709-710; 788 NW2d 399 (2010).

Defendant concedes that he was not entitled to an instruction on statutory self-defense under the Self-Defense Act (SDA), MCL 780.971 *et seq.*, which "codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *Dupree*, 486 Mich at 708. The SDA applies only to "[a]n individual who has not or is not engaged in the commission of a crime" and who is "anywhere he or she has the legal right to be . . . ." MCL 780.972(1) and (2). Defendant maintains, however, that he was entitled to an instruction on common-law self-defense. The SDA "does not diminish an individual's right to use deadly force or force other than deadly force in self-defense or defense of another individual as provided by the common law of this state in existence on October 1, 2006." MCL 780.974. At common law, self-defense justified the killing of another person if the accused honestly and reasonably believed that his life or the life of another person was in imminent danger or that there was a threat of serious bodily harm. *People v Guajardo*, 300 Mich App 26, 35, 35 n 2; 832 NW2d 409 (2013). To be lawful self-defense, the evidence must show that (1) the defendant honestly and reasonably believed that he or another person was in danger, (2) the feared danger was death or serious bodily harm, (3) the action taken appeared at the time

to be immediately necessary, and (4), generally speaking, the defendant was not the initial aggressor. *People v Riddle*, 467 Mich 116, 119, 120 n 8; 649 NW2d 30 (2002). "The reasonableness of a person's belief regarding the necessity of deadly force depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor." *Guajardo*, 300 Mich App at 42 (citation and quotation marks omitted). At common law, "[a] participant in voluntary mutual combat will not be justified in taking the life of another until he is deemed to have retreated as far as safely possible." *Riddle*, 467 Mich at 120.

Generally, "a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." *Guajardo*, 300 Mich App at 35. However, where the defendant is the initial wrongdoer, but the victim of the initial wrong responds with assaultive conduct sufficiently in excess of the force necessary to defend himself from the initial wrong, the defendant may be justified in using deadly force to protect himself. *People v Townes*, 391 Mich 578, 593; 218 NW2d 136 (1974). The Supreme Court in *Townes* stated:

> It may be conceded that everything that was done by defendant in the transaction, up to the moment of the final attack by the deceased, was unlawful and wrongful; yet, if that assault was felonious and was of such a character as to clearly indicate an intention by the assailant to take defendant's life, or to inflict on him some enormous bodily injury, there is no valid ground for holding that he was precluded from the right to defend himself against it by the mere fact that he had been, or then was engaged in the commission of a trespass upon the property of the deceased.

> The general doctrine undoubtedly is that one who has taken the life of an assailant, but who was himself in the wrong, cannot avail himself of the plea of self-defense. But the wrong which will preclude him from making that defense must relate to the assault in resistance of which the assailant was killed. If at the time the assault is made upon him, he is engaged in the commission of an act which is wrongful, but which is independent of the assault he may lawfully defend himself against it, to the extent even of slaying the assailant, if it is felonious, unless, indeed, his act is of such a character as to justify the assault. The mere fact, then, that defendant was engaged in committing a trespass when deceased attacked him, does not necessarily constitute him a wrong-doer in the matter of the assault, or preclude him from making the defense of self-defense. [*Id.* (citations, quotation marks, and ellipses omitted).]

Defendant argues that the jury could have inferred that he never anticipated that Jajuan's attempt to retrieve his daughter's cell phone would lead to violence and that he entered the house simply to break up a fight between Jajuan and Williams. Defendant contends that after he entered the house and Nigel Melton released a pit bull, defendant honestly and reasonably believed that it was necessary to start shooting in defense of himself and Jajuan. In support of his self-defense argument, defendant relies on (1) Melton's release of the pit bull and (2) defendant's reasonable conclusion that "Melton might . . . pull out a gun and begin shooting." We hold that the trial court did not err in refusing to instruct the jury on common-law self-

defense, where there was no evidence supporting a self-defense instruction under the applicable common-law principles, even when viewing the evidence in a manner favorable to defendant.

Jajuan testified on behalf of the prosecution, but defendant relies quite heavily on his testimony in proffering his claim of self-defense. Jajuan testified that Williams brandished a gun at the doorway of Williams's house, that Williams stated, "don't get shot," that Jajuan rushed and tackled Williams and the two landed in a hallway in the house, that Jajuan took the gun from Williams and pistol-whipped him, and that Williams then yelled out something suggesting that he wanted someone to release the dog. There was also evidence that Melton proceeded to open a door, releasing the pit bull into the melee, that the dog attacked and bit defendant, that defendant then shot the dog, and that defendant next shot Williams, Melton, and another occupant of the home as they attempted to flee. These facts do not support a self-defense theory, even when giving defendant the benefit of multiple assumptions.[2] First, when threatened at the doorway by Williams, Jajuan had a duty to retreat. Assuming that there was no such duty, or that the failure to retreat by Jajuan was irrelevant for purposes of examining defendant's conduct relative to self-defense, Jajuan had gained control of the situation inside the house with respect to Williams, so there was no basis for defendant to start shooting in connection to Williams's brandishing of a gun, nor does defendant make that claim.

Assuming for the sake of argument that the act of releasing the pit bull constituted an improper and unjustified escalation in response to the transpiring events where Jajuan was pistol-whipping Williams, defendant shot the dog, and there was no more threat to defendant or Jajuan. Nevertheless, defendant opened fire on the three victims as they retreated. And there was absolutely no evidence, direct or circumstantial, nor could it be reasonably inferred from any of the evidence, that Melton had or possibly had a gun; therefore, there was no support for defendant's claim that he reasonably believed that Melton would pull out a gun and start shooting. Moreover, there was a dearth of evidence regarding what defendant actually thought at the time and, regardless, the evidence showed, without contradiction, that Melton was shot as he tried to escape the situation. In sum, there was no evidence supporting an instruction on self-defense. Reversal is unwarranted.

### III. AMENDMENT OF THE INFORMATION

Defendant next argues that the trial court erred in permitting the prosecutor to amend the information with respect to first-degree home invasion after the prosecution rested. Defendant was charged with first-degree home invasion under MCL 750.110a(2), which provides:

---

[2] While there might have been evidence showing that defendant shot the dog in self-defense relative to the charge concerning the injuring of an animal, MCL 750.50b, defendant simply does not adequately develop a legal argument on that particular and unique issue. Further, the charge has an element that the defendant must act "without just cause," MCL 750.50b(2), and thus the issue of self-defense, although not framed in that terminology, was effectively presented to the jury and adjudicated in favor of the prosecution.

(2) A person who *breaks and enters* a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling *without permission* with intent to commit a felony, larceny, or assault in the dwelling, or a person who *breaks and enters* a dwelling or enters a dwelling *without permission* and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.

(b) Another person is lawfully present in the dwelling. [Emphasis added.]

The original information only alluded to breaking and entering, not entry without permission. The prosecutor indicated that this was an oversight, that the information should have set forth both theories of entry, and that she did not realize the mistake until defendant moved for a directed verdict on home invasion after the close of the prosecutor's case. The witnesses had agreed that defendant entered the dwelling through a door that was left open after Jajuan entered and assaulted Williams. The prosecutor requested that the information be amended to reflect entry without permission. Defense counsel argued that, given the wording of the information, his cross-examination of the prosecution's witnesses had focused on the lack of a breaking, not permission. The prosecution had elicited overwhelming evidence through multiple witnesses that defendant had entered the house without permission. The trial court granted the motion to amend the information, and the jury was instructed on entry without permission for purposes of first-degree home invasion. We note that after the trial court ruled on allowing the amendment, defendant decided not to present any witnesses of his own; defense counsel did not make a request to recall any of the prosecution's witnesses.

"An information may be amended at any time before, during, or after trial to cure any defect, imperfection, or omission in form or substance, including a variance between the information and the proofs, as long as the accused is not prejudiced by the amendment and the amendment does not charge a new crime." *People v Higuera*, 244 Mich App 429, 444; 625 NW2d 444 (2001), citing MCL 767.76; see also MCR 6.112(H). Defendant has made absolutely no showing of the requisite prejudice, and he was not charged with a new crime as a result of the amendment. Although he claims that his cross-examination of the prosecution's witnesses would have been altered, he does not assert or even suggest that he would have been able to elicit testimony showing that defendant had permission to enter the home. Indeed, given the overwhelming evidence of an entry absent permission, it is clear that such testimony on cross-examination would not have been elicited.[3] Moreover, defendant cannot complain of being prejudiced when there is nothing in the record indicating that the court would not have allowed defendant to explore the issue of permission by calling or recalling witnesses; defendant opted to

---

[3] We note that in arguing the self-defense issue in his appellate brief, defendant states that "[h]e had no permission to enter the house[.]"

end the testimony portion of the trial after the court agreed to allow the information to be amended. In fact, the trial court was sympathetic to defendant's position and had certainly not closed the door on further proofs on the issue. Defendant's decision not to pursue the matter is the best indication that there would have been no benefit, and likely only damage, in making inquiries into whether defendant had permission to enter the house. The trial court did not abuse its discretion in granting the prosecutor's motion to amend the information. *People v McGee*, 258 Mich App 683, 686-687; 672 NW2d 191 (2003).

## IV. SENTENCING

Defendant also argues that the trial court violated his Sixth Amendment right to a jury trial by scoring the sentencing guidelines on the basis of facts not admitted by defendant or found by the jury. Although defendant's argument on this matter is cursory and fails to include any discussion of the offense variables, the prosecution concedes that defendant is entitled to a *Crosby* remand under *Lockridge*, 498 Mich 358, and we find that the record supports such a remand.

Affirmed with respect to defendant's convictions, but, as to defendant's sentences, remanded for a *Crosby* proceeding consistent with *Lockridge*. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Michael J. Riordan

-6-