CASE 64—PROSECUTION OF MARTIN CONNOR FOR MANSLAUGHTER.—JUNE 16.

## Connor v. Commonwealth.

APPEAL FROM DAVIESS CIRCUIT COURT—T. F. BIRKHEAD, CIRCUIT JUDGE.

DEFENDANT CONVICTED AND APPEALS. AFFIRMED.

HOMICIDE—INSTRUCTIONS—MODIFICATION—APPEAL AND ERROR—EVIDENCE—SUFFICIENCY—FINDING OF JURY—CONCLUSIVENESS.

1. The Court of Appeals will not reverse in criminal cases on the facts.
2. All instructions given by the court must be read together.
3. Where, in a prosecution for homicide, the only question was whether the shooting was done in self-defense, an instruction that defendant is presumed innocent until proven guilty to the exclusion of a reasonable doubt, that this presumption attends him at every stage of the trial, and that, if the jury had a reasonable doubt as to whether he was proven guilty of murder or voluntary manslaughter, they should find him guilty of the less offense, is not cause for reversal where the court properly instructed the

jury on the question of self-defense, and the jury found the defendant guilty of manslaughter only.

4. In a prosecution for homicide, an instruction on the issue of self-defense, limiting the defendant's right of self-defense to his establishing to the satisfaction of the jury whether he believed he had no safe means of avoiding the attack, or to him apparently safe means of avoiding it, is not erroneous because of the use of the word "avoiding."

5. In a prosecution for homicide, it appeared that deceased was assaulted while in a saloon, whereupon a fight ensued between deceased and the person who assaulted him. Deceased had forced his antagonist to the back part of the room, and had him pretty well beaten up, when the bartender and another person intervened, and took from deceased a chair with which he was about to strike his antagonist, throwing deceased back toward the center of the room. Defendant, who had taken no part in the fight was standing near the bar counter. Deceased and his antagonist were drunk. Defendant, so far as the record disclosed, was sober, and on good terms with all of the parties. The evidence was conflicting as to what followed when deceased was thrown back till he was killed by defendant; tending to support defendant's theory of self-defense, and the Commonwealth's theory of murder. HELD, that it was proper to refuse to modify an instruction on self-defense which told the jury that if defendant believed, and had reasonable ground to believe, that he had no safe or to him apparently safe means, of avoiding the danger, then the defendant had the right to use such force as was necessary, or to him apparently necessary, to repel the assault by inserting after the word "danger" the phrase "then the defendant was not obliged to retreat, and the defendant had the right to stand and repel the assault."

C. M. FINN, SWEENEY, ELLIS & SWEENEY, ATTORNEYS FOR APPELLANT.

We submit that on all the evidence the following facts are shown:

1. Appellant was sober, orderly and law abiding.

2. He had a legal right to be in the saloon, and no one had the right to assault him.

3. He was assaulted by deceased without any provocation whatever.

4. He was not only assaulted by deceased, but he witnessed a vicious assault made by deceased upon Parsons, and had the right to believe that when deceased declared his intention to kill ap-

pellant and rushed upon him with a drawn knife, that he would carry his threat into execution.

5. That he had no means of escaping, and if he had attempted to do so it would only have increased his peril.

6. The court will not doubt that appellant at the time he shot and killed deceased believed and had reasonable grounds to believe that he was in danger of losing his life or suffering great bodily harm.

7. The lower court in its instructions to the jury failed to define the law governing appellant's right of self defense, or to properly instruct on that question.

8. The court erred in modifying an instruction asked by appellant's attorney by adding thereto the words, "and there appeared to him no other safe means of escape from the impending danger."

9. The court erred in refusing to modify instruction given by the court by adding thereto the following qualification asked by appellant's attorney: "The court does not mean by the term 'avoiding the danger' as used in these instructions, nor does the law of self-defense require, that the defendant was obliged to retreat or run away."

### AUTHORITIES CITED.

Hughes' Criminal Law and Procedure, sec. 222; Barnett v. Com., 84 Ky., 451; Bohannon v. Com., 8 Bush, 487; Holloway v. Com., 11 Bush, 344; Young v. Com., 6 Bush, 312; Phillips' case, 2 Duv., 328; Beard v. United States, 158 U. S., L. Ed., 1086; Erwin v. State, 29 Ohio, 185; Runyan v. State, 57 Ind., 80; McClurg v. Com., 17 Ky. Law Rep., 1341.

N. B. HAYS, ATTORNEY GENERAL AND LORAINE MIX, FOR APPELLEE.

1. While there is some evidence that deceased was advancing upon appellant with an open knife, and made the threat to take his life, there is also evidence that appellant fired the shot that killed deceased without being in danger, that deceased had no knife and did not even speak to accused at the time he was killed.

2. From all the evidence we submit that the instructions given by the court were fair and impartial and fully and fairly present the law governing the case.

3. A distinction is made between the words "to escape" and "to flee." Instructions thus containing the word "escape" have been approved by this court.

Connor v. Commonwealth.

4. The use of the word "avoid" in instructions similar to those given in this case has been frequently sanctioned.

## CITATIONS.

Ferris v. Com., 14 Bush, 366; Brumback v. Com., 7 R., 443; Klinglesmith v. Com., 7 R., 744; Hughes v. Com., 19 R., 601; Barnes v. Com., 22 R., 1804; Davis v. Com., 4 R., 717; Evans v. Com., 11 R., 574.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

On December 25, 1902, W. M. Parsons insulted Ben Cutler in a saloon in Owensboro. Cutler struck Parsons, and thereupon a fight ensued between Parsons and Ben Cutler and his brother Fred. Parsons was forced to the back part of the room, and was pretty badly beaten up, when the bartender and a man named Davidson intervened, and took from Ben Cutler a chair with which he was about to strike Parsons; throwing him back toward the center of the room. Appellant, Connor, who had taken no part in the fight, was standing near the bar counter. As to what followed the proof is somewhat conflicting. The proof for Connor is to the effect that Ben Cutler, with a knife in his hand, advanced on him, threatening to kill him, and that he retreated behind the counter and got a pistol there, and shot Ben Cutler with it, after twice calling upon him to stop, just as he was about to come around behind the counter. The proof for the Commonwealth tends to show that Connor had the pistol in his hand, and was out in front of the counter, before Ben Cutler was thrown around, and that he first aimed at Fred Cutler, and, when he dodged down, shot Ben. Ben Cutler died almost immediately. The numerical weight of the evidence sustained the defendant's version of the affair, but the jury found him guilty of manslaughter, and fixed his punishment at ten years in the penitentiary. Parsons and

the Cutlers were all drunk. Connor was sober; was about thirty years of age and so far as it appears was on good terms with all of the parties. While the evidence would have sustained a verdict for the defendant, the jury saw and heard the witnesses, there was sufficient evidence to go to the jury, and it has often been held that this court will not reverse in criminal cases on the facts. We need not, therefore, discuss the evidence, but only state so much of it as is material in determining the objections urged to the instructions of the court to the jury.

In instruction 1 the court defined the crime of murder. Then he gave instruction 2, in these words:

"The court further instructs the jury that if they believe from the evidence, to the exclusion of a reasonable doubt, that in the county of Daviess, and before the finding of the indictment herein, the defendant did unlawfully, willfully, and feloniously kill and slay one Ben Cutler, by shooting him to death with a pistol loaded with powder and ball, or other hard substance, of which shooting and wounding said Ben Cutler did die within a year and a day thereafter, but they further believe from the evidence, to the exclusion of a reasonable doubt that said shooting was not done maliciously and with malice aforethought, but do believe beyond a reasonable doubt that same was not done in his necessary self-defense or what appeared to him at the time to be his necessary self-defense, but was done in a sudden heat and passion, or sudden affray, and under such provocation as was reasonably calculated to excite an ungovernable passion, then they should acquit him of the charge in the indictment, and find him guilty of voluntary manslaughter, and fix his punishment at confinement in the penitentiary for a period of not less than two years, nor more than twenty-one years, in the discretion of the jury."

The court apparently meant to tell the jury that if they believed from the evidence, beyond a reasonable doubt, that the defendant shot and killed Ben Cutler, and had a reasonable doubt as to whether the shooting was done with malice aforethought, but believed from the evidence, beyond a reasonable doubt, that the shooting was done in a sudden heat and passion or sudden affray, and not in his necessary or apparently necessary self-defense, they should find him guilty of voluntary manslaughter. The instruction, as given, required the jury apparently to find from the evidence, to the exclusion of a reasonable doubt, that the shooting was not done maliciously or with malice aforethought, in order to reduce the crime from murder to manslaughter, and, if the jury had found the defendant guilty of murder, the error would be material. But the jury only found him guilty of manslaughter. All the instructions given by the court must be read together. Instructions 5 and 6 are as follows:

"(5) The court further instructs the jury that if they believe from the evidence, to the exclusion of a reasonable doubt, that the defendant is proven guilty, but entertain a reasonable doubt as to whether he is proven guilty as to the defense defined in the first instruction, or the one in the second instruction, they should find him guilty of the less offense, and should fix his punishment for the less offense.

"(6) The court further instructs the jury that the defendant is presumed innocent until proven guilty to the exclusion of a reasonable doubt, and this presumption attends him at every stage of the trial, and, if the jury entertain a reasonable doubt as to whether the defendant is proven guilty, they should acquit him."

It will thus be seen that the court told the jury that the defendant is presumed innocent until proven guilty to

the exclusion of a reasonable doubt, that this presumption attends him at every stage of the trial, and that, if they had a reasonable doubt as to whether he was proven guilty of murder or voluntary manslaughter, they should find him guilty of the less offense. There was no question, under the evidence, that the defendant shot and killed the deceased in a sudden affray. The only real question in the case was whether the shooting was done in self-defense. The verbiage of instruction 2 could not have misled the jury on this question. As to self-defense, the court gave these two instructions:

"(3) The court further instructs the jury that if they believe from the evidence, to the exclusion of a reasonable doubt, that the defendant killed one Ben Cutler by shooting him to death with a pistol loaded with powder and ball or other hard substance, but they further believe from the evidence that at the time of said shooting and killing the defendant was engaged in a sudden affray with said Cutler, and was being attacked by said Cutler, and the defendant believed he was then in danger of suffering great bodily harm or death at the hands of said Cutler, and he believed he had no safe means of avoiding said attack, or to him apparently safe means of avoiding same, and the defendant shot said Cutler in his necessary self-defense, or what appeared to him, under the circumstances, to be his necessary self-defense, considering all the circumstances and surroundings at the time of said shooting, they should find him not guilty, on the ground that said killing was done in self--defense.

"(4) If the jury believe from the evidence that, at the time defendant shot and killed deceased, he was being assaulted or menaced by the deceased, and he (defendant) believed, and had reasonable grounds to believe, from the character of the deceased, his previous threats, if any proven, and from the circumstances of the meeting, and the na-

ture of the assault or menace, that he (defendant) was then and there in danger of loss of life or suffering great bodily harm, and he believed, and had reasonable grounds to believe, that he had no safe, or to him apparently safe, means of avoiding said danger, then the defendant had the right to use such force as was necessary, or to him apparently necessary, to repel such assault, and protect himself from such danger; and, if he shot deceased under such circumstances, the jury should acquit defendant on the grounds of self-defense."

Complaint is made of these words in instruction 3: "And he believed he had no safe means of avoiding said attack, or to him apparently safe means of avoiding same." This court has in several cases condemned the use of the word "escape" in self-defense instructions, but the word "avoid" has been several times sanctioned. Hughes v. Commonwealth, 41 S. W., 294, 19 Ky. Law Rep., 501; Arnold v. Commonwealth, 55 S. W., 894, 21 Ky. Law Rep., 1566; Barnes v. Commonwealth, 110 Ky., 348, 61 S. W., 733, 22 Ky. Law Rep., 1802.

The objection to instruction 4 is that the defendant asked that the following words be inserted in it after the words "safe means of avoiding said danger:" "Then the defendant was not obliged to retreat, but he had the right to stand and repel such assault." The court properly refused to so modify the instruction. The right of self-defense is but the right of necessity. A man may not slay another in defense of himself unless necessary to secure his own safety. It is true that, when attacked by another feloniously, he is not obliged to retreat, for this often would be to increase his peril. Still the apparent necessity is the measure of his right to slay the assailant. Where a man is attacked in his home, and in a few other like cases, the instruction referred to has been given; but there was nothing in this case requiring any other

rule than that laid down in the instruction—that the defendant had the right to use such force as was necessary, or apparently necessary, to protect himself. This left the jury to determine from all the evidence whether it was necessary for the defendant to shoot the deceased when he did, or whether he had other apparently safe means of securing his safety. They were thus left to determine whether he should have stood his ground or given back before shooting. It used to be laid down as the rule that, before killing his assailant, the assailed, to be justified on the ground of self-defense, must retreat to the wall, and only slay him as a last resort, when he could retreat no further. But the rule now is that whether he should stand his ground or give back is a question for the jury, and that he may properly follow that course which is apparently necessary to save himself from death or great bodily harm. The case of Oder v. Commonwealth, 80 Ky., 32, 4 R., 18, was overruled in Reynolds v. Commonwealth, 114 Ky., 912, 72 S. W., 277, 24 Ky. Law Rep., 1743. The verdict of the jury shows that they did not credit the defendant's version of the transaction, but came to the conclusion, as no reason was shown for an attack by Ben Cutler on appellant that the latter, in the remark he made as he was thrown around by Patterson, had in mind some one in the difficulty with him, and that it was unnecessary for appellant to shoot him as he did. Had they believed appellant's version of the shooting, they would have acquitted him as readily under the instruction given by the court as under that asked by him. On the whole record, therefore, we conclude that appellant had a fair trial on the merits of his case, and no legal reason appears for disturbing the verdict of the jury.

Judgment affirmed.