698 P.2d 1279

**STATE of Arizona, Appellee,**

v.

**James C. OTTMAN, Appellant.**

**No. 6314.**

Supreme Court of Arizona,
En Banc.

April 30, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Galen H. Wilkes, Asst. Attys. Gen., Phoenix, for appellee.

James Kemper, Kemper & Henze, Phoenix, for appellant.

HAYS, Justice.

Appellant James C. Ottman was tried by a jury and convicted of first degree murder. A.R.S. § 13–1105. Pursuant to A.R.S. § 13–703, appellant was sentenced to life imprisonment without possibility of parole for 25 years. Ottman appealed. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 13–4031. We affirm.

Appellant raised two issues on appeal:

I. Did the trial court err in refusing to give the defendant's requested instruction on retreat?

II. Was the prosecutor guilty of misconduct, warranting a mistrial, when in his closing argument he asked the jury to have sympathy for the victim's wife?

FACTS

Late in the afternoon of Friday, December 16, 1983 a group of school bus drivers from the Paradise Valley School District gathered for a Christmas party at Dante's Inferno, a north-side Phoenix restaurant and bar. Appellant, 42, a former bus driver employed by this school district, joined the party about 4:30 pm. There was considerable drinking. John Roselle, 62, the victim, and also a bus driver, arrived later.

At about 7 pm, Manny Gaston, a black bus driver, arrived at the party. Gaston sat next to Roselle and toward one end of a long table. Appellant was sitting toward the other end of this table. When Gaston arrived, appellant commented to an acquaintance, "I'd like nothing more than to blow that black motherfucker's head off."

Close to the end of the evening, after some of the partygoers had departed, Roselle and Gaston were invited to join the group that remained at the other end of the table. In the course of being seated, Gaston placed his hand on the back of a white female partygoer's chair, leaned over and said "Hi." He knew this woman from work. Appellant suddenly rose, drew a large buck knife from a sheath on his belt and threatened Gaston. Appellant told Gaston that he had better "keep his hands off the white women or he [appellant] would cut him [Gaston] from ear to ear." Gaston raised both hands in the air and said, "No problem." A heated exchange between Roselle and appellant followed. Among other things, appellant called Roselle a "nigger lover."

Shortly afterward, Richard Conrad, who was also seated at the table, told appellant that he was available if appellant needed any help with either Gaston or Roselle. Appellant later told Conrad, "[c]ompared to me you are a pussy, and I can whop [sic] your fucking ass right now." With this, Conrad jumped to his feet and assumed a fighting stance. Conrad's wife intervened and insisted that Conrad leave the bar. After a few remarks to appellant, she also left the bar.

Later, Gaston told Roselle that he wanted to leave. Gaston felt uncomfortable and was worried that there would be trouble. Roselle told him that things would "be okay," bought him another drink, and asked that he stay. About 20 minutes later, after Gaston finished his drink, he picked up his coat and left the bar. Roselle accompanied him. The two men stood by Roselle's car and discussed the situation in the bar. Roselle was angry and disgusted with appellant's racist behavior. Gaston told Roselle not to worry about it; Gaston said he had been called names before.

During this conversation, appellant came out of the bar. Because his car was parked near Roselle's, he walked directly toward the two men. Appellant said to Roselle, "I guess you and your nigger are going home now." Roselle and appellant cursed one another. Appellant, who was on the other side of Roselle's car, drew his knife and made a slashing motion. He asked Roselle if he "was protecting his little nigger." He challenged Roselle, saying, "let's get to the program." He told Roselle that he could cut his throat as easily as he could cut Gaston's. When Roselle did not respond, appellant jammed his knife against Roselle's car and closed the blade. The two men continued to argue.

When Roselle walked toward the rear of his car, appellant went to his truck. Roselle opened the trunk of his car and reached for a tire tool. Gaston intervened and told Roselle, "[i]t's not worth all the hassle and bother to sit here and have a dispute or fight over something really minor." Roselle relented and left the tire tool in his trunk. It is unclear whether he closed his car's trunk at this point.

Appellant took a revolver from his truck. One witness testified that appellant opened the door of his truck, leaned in, took the weapon out and loaded it. Appellant denies loading the weapon. Appellant advanced on the two men. When Gaston began to back away, appellant asked, "What's wrong? You don't have the balls to stand there?" Roselle stood his ground. Witnesses testified that Roselle had no weapon and that his hands remained at his sides. He told appellant, "If you are going to shoot him [Gaston] you are going to have to shoot me first." Appellant raised his revolver and fired one shot which struck Roselle in the middle of his forehead. Roselle grabbed his forehead and fell to the pavement. Gaston ran back inside the bar and asked that someone call an ambulance. Appellant walked back to his truck and drove away.

Appellant stopped at a bar near his home. He called his wife, told her that he had accidently shot someone and then abruptly hung up. At the bar, appellant asked an acquaintance to "hold" the revolver. He explained that he was having trouble with some people and did not want to use the weapon. Initially, appellant told a

friend that he was going to flee. The friend convinced appellant to return home. Deputies were waiting at appellant's home.

Deputies testified that appellant appeared somewhat intoxicated but was able to walk and coherently answer their question. He told deputies that he had been at a party where a man threatened him with a knife. He stated that he drew his own knife and forced the attacker to retreat. He denied shooting Roselle.

At trial, appellant did not dispute killing Roselle but maintained that he acted in self-defense. He claimed that during the argument in the parking lot, Roselle threatened to "take his head off" with an undisclosed weapon. When Roselle walked to the rear of his car, appellant retreated to his truck intending to leave. According to appellant, he confronted Roselle only after his truck would not start. He allegedly jumped from the truck and told Roselle to "leave it alone." According to appellant, Roselle replied, "I ain't afraid of you or what you have in your hand." Believing Roselle also had a firearm, appellant raised his weapon and it accidently discharged.

### RETREAT

Appellant contends that the trial court erred in refusing to give an instruction on retreat. Appellant's instruction provided in relevant part that, "A person who is threatened with attack that justifies the exercise of the right of self-defense need not retreat...."

It is well-settled that when the trial court adequately instructs on self-defense, it need not also give a "no duty to retreat" instruction. *State v. Jessen,* 130 Ariz. 1, 8–9, 633 P.2d 410, 417–18 (1981); *State v. Palomarez,* 134 Ariz. 486, 488–89, 657 P.2d 899, 901–02 (App.1982). In the case at bar, the trial court adequately instructed the jury on self-defense when it gave RAJI 4.04 (Justification—Self-Defense). We find no error.

### MISCONDUCT

Appellant contends that the prosecutor was guilty of misconduct in his closing argument because he appealed to the passions of the jury. The prosecutor said:

> You know there's a lady in this courtroom right now. She wants to know what the verdict is. She's hoping and as the defendant is too that somehow you will compromise, that you will find him guilty of a lesser offense, manslaughter, second degree murder, or maybe you'll say to yourself I just can't possibly do this, the man has a wife and kid and I want to—before you give any sympathy to that man—he deserves none whatsoever. Before you give him—sympathy to him, think of another woman who will be waiting for your verdict too.

> On December 16th at about 7:30 in the evening she had everything to look forward to. She had her house here, they were retired, husband had a part-time job, her children are fine and well in New Jersey and at 9:30 she's at the hospital with her husband and he's dead. I can guarantee you that her life is totally destroyed. She had nothing to look forward to, nothing.

> You may think sympathy for someone else but in terms of that woman, she wants justice and that's your duty to as jurors.

According to appellant, these statements were improper and the trial court erred in not granting his motion for mistrial. We disagree.

While these statements were improper, we believe that any error engendered by these comments was adequately cured by the trial court's limiting instruction. *See State v. Van Alcorn,* 136 Ariz. 215, 218–19, 665 P.2d 97, 100–01 (App.1983). Because of appellant's motion, and after these comments were made, the trial court cautioned the jury in the following manner:

> Ladies and gentlemen, before we begin the instructions of law, I will preliminarily instruct you that you are to disregard any statements regarding any sympathy for any person affected by the outcome of the case.

Moreover, the jury instructions, a copy of which the jury was permitted to take with them for use in their deliberations, contained the following language:

> You must not be influenced by sympathy or prejudice. You must not be concerned with any opinion you may feel I have about the facts. You are the sole judges of the facts.
>
> . . . .
>
> When testimony was ordered stricken from the court record, you are not to consider that testimony as evidence.
>
> . . . .
>
> In the opening statements and closing arguments the lawyers have talked to you about the law and the evidence. What the lawyers said is not evidence but it may help you to understand the law and the evidence.

We find no error.

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035 and have found none.

Judgment of conviction and sentence affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.