**John T. HILBERT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2002–SC–0095–MR.**

Supreme Court of Kentucky.

May 19, 2005.

Thomas M. Ransdell, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Susan Roncarti Lenz, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice GRAVES.

Appellant, John T. Hilbert, stands convicted of two counts of murder for the shooting deaths of Danny Wayne Elmore and Joe Eddie Stump. The jury fixed the sentence for the murder of Elmore at twenty-seven (27) years. After finding aggravating circumstances in the murder of Stump, the jury fixed Appellant's sentence for this separate crime at life without the benefit of probation or parole for twenty-five (25) years. The jury recommended that each sentence run consecutively, but following Appellant's motion that such a sentencing arrangement would exceed the statutory maximum, the trial judge entered an order for the sentences to run concurrently. Appellant now appeals to this Court as a matter of right.

The shootings occurred at the mobile home of Appellant's estranged girlfriend, Karen Poole. Karen shared the trailer with her sister Tammy, and on the evening of the shootings, Karen asked Appellant to be their "designated driver." While out, the sisters met Elmore and Stump, and invited them home. Back at the trailer, Appellant and the two victims danced with Karen and Tammy, and according to statements Appellant and Karen later gave to police, tensions soon rose.

Appellant did not testify at trial, but following his arrest, Appellant claimed that the victims grabbed him, threw him up against the wall, then pushed him out the doorway, hitting his head against the door. Appellant advised police that he "flipped out," pulled a gun from his jacket pocket and shot both men. According to Appellant, the victims kept coming and he did not know what to do. After shooting Elmore, Appellant said that the "big boy" was coming at him and that is when he killed Stump.

Neither Karen nor Tammy was present when the victims allegedly roughed up Appellant and ejected him from the trailer. Karen testified that she left the room after asking Appellant to retrieve something from her car. While in the bathroom, Karen heard what sounded to her like firecrackers going off outside. Upon returning to the living room, Karen observed Appellant enter the house, pull out a gun, and shoot Stump as the victim walked out of the kitchen. Tammy provided similar testimony, stating that after going to the bedroom to change her clothes, she saw Appellant come in through the front door and fire at Stump. Neither witness observed the shooting of Elmore, whose body was later found outside on the front porch, dead from a single gunshot fired at close range.

## I. Jury Instructions: Self–Defense

 Appellant does not dispute that he killed Elmore and Stump. Instead, Appellant hoped to justify the shootings as a matter of self-defense. In fact, during opening statements, defense counsel asserted that Appellant was "not guilty because this was self-defense." The trial judge, however, found no basis from the evidence introduced at trial to support a self-defense instruction, but did allow the jury to consider whether Appellant acted under the influence of an extreme emotional disturbance.

This issue arose shortly before the close of evidence, in the context of whether or not Appellant's testimony was required in order to submit instructions on self-defense to the jury. In denying the requested instructions, the trial judge reasoned that the self-defense statute, KRS 503.050 "is based on the subjective belief of the defendant and the defendant is the only one who can testify." In chambers, the trial judge further explained:

> [I]t says the defendant must believe. I'm not saying there is not evidence from which he could believe that. But he's the only—the jury cannot assume that he believes it because he's the—it's subjective and the case law says that it is subjective. It is what he believes.

Appellant claims the trial judge has misinterpreted the relevant law regarding the availability of self-defense instructions for defendants who choose not to testify.

 The Kentucky Penal Code allows a defendant to justify the use of deadly physical force upon another person when the defendant *believes* that such force is necessary as protection against an imminent threat of death or serious physical injury. Specifically, subsections (1) and (2) of KRS 503.050 provide:

(1) The use of physical force by a defendant upon another person is justifiable when the defendant *believes* that such force is necessary to protect himself against the use or imminent use of unlawful physical force by the other person.

(2) The use of deadly physical force by a defendant upon another person is justifiable under subsection (1) only when the defendant *believes* that such force is necessary to protect himself against death, serious physical injury, kidnapping, or sexual intercourse compelled by force or threat.

(emphasis added).

 In evaluating this statute, the trial judge was correct insofar as "the focus of the penal code is on the defendant's actual subjective belief in the need for self-protection and not on the objective reasonableness of that belief." *Elliott v. Commonwealth*, 976 S.W.2d 416, 419 (Ky.1998). However, the question here is not whether the defense of self-protection is based upon a defendant's subjective state of mind, but whether a defendant must testify in order to establish such a personally held belief.

Kentucky courts have long held that a defendant need not testify in order to receive an instruction on self-defense. *See Hasty v. Commonwealth*, 272 S.W.2d 325, 326 (Ky.1954); *Benson v. Commonwealth*, 290 Ky. 713, 162 S.W.2d 538 (1942); *Rutherford v. Commonwealth*, 76 Ky. (13 Bush) 608 (1878). In *Hasty, supra*, the predecessor to this Court opined:

> Concerning the question of whether or not the appellant was entitled to an instruction on self-defense, we find that in cases of this character the court is required to give such an instruction where the evidence is wholly circumstantial, there is evidence of a struggle, and the accused fails to testify, or, although he does become a witness, he does not tes-

tify as to any facts indicating the manner in which the deceased met death.

Among the evidence we find: Appellant's statement to police indicating an altercation between the victims and himself; Appellant's statement that the victims kept coming and he didn't know what to do; a welt on Appellant's head, attributable either to the altercation or to an automobile wreck later that evening; and finally, evidence that in an unrelated incident several years earlier, Appellant had been severely beaten during a mugging, after which he bought a gun and became more reserved.

■ Admittedly, the evidence supporting Appellant's belief in the need for the use of force was not strong, nor free from contradiction. However, such evidence need only raise the issue, for an instruction on self-defense is necessary once sufficient evidence has been introduced at trial which could justify a reasonable doubt concerning the defendant's guilt. *Estep v. Commonwealth,* 64 S.W.3d 805, 811 (Ky. 2002); *Commonwealth v. Day,* 983 S.W.2d 505, 508 (Ky.1999); *Jewell v. Commonwealth,* 549 S.W.2d 807, 812 (Ky.1977), *overruled on other grounds, Payne v. Commonwealth,* 623 S.W.2d 867 (Ky.1981), *cert. denied,* 456 U.S. 909, 102 S.Ct. 1758, 72 L.Ed.2d 167 (1982).

■ In addition, we hardly need to repeat that a criminal defendant is entitled to jury instructions on any defense supported by the evidence. *Sanborn v. Commonwealth,* 754 S.W.2d 534 (Ky.1988); *Curtis v. Commonwealth,* 169 Ky. 727, 184 S.W. 1105, 1107 (1916). In this regard, we note that the evidence which tended to show Appellant's belief in the need for self-defense may also be interpreted as evidence of a *mistaken* belief in that need. Therefore, the full range of self-defense instructions, including the wanton· and reckless belief qualifications, as provided by KRS 503.120(1), are appropriate in this

matter. *See generally Commonwealth v. Hager,* 41 S.W.3d 828 (Ky.2001).

Intertwined with Appellant's argument that he was improperly denied instructions on self-defense, Appellant asserts that the trial judge's ruling deprived him of his Fifth Amendment right against self-incrimination. Caught in the proverbial "Catch–22," Appellant claims he was forced to choose between taking the witness stand or forgoing a valid defense.

■ In general, where circumstantial or indirect evidence fails to raise the issue of self-protection, the fact that a defendant must testify or forgo this defense does not implicate the Fifth Amendment. The defendant's "choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination." *United States v. Rylander,* 460 U.S. 752, 759, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983), *quoting Williams v. Florida,* 399 U.S. 78, 84, 90 S.Ct. 1893, 1897–98, 26 L.Ed.2d 446 (1970).

Although we are not prepared to say that the trial court's actions infringed on Appellant's privilege against self-incrimination, particularly since Appellant chose not to testify, we note that at least one jurisdiction has ruled otherwise. In *People v. Hoskins,* 403 Mich. 95, 267 N.W.2d 417, 419 (1978), the Michigan Supreme Court stated: "A defendant need not take the stand and testify in order to merit an instruction on self-defense.... A ruling to the contrary compromises a defendant's privilege against self-incrimination."

Finally, Appellant contends the trial court erred by denying his requested instruction on the duty to retreat, or more specifically, that Appellant had no duty to retreat. Appellant claims the prosecution raised this issue by repeatedly telling the jury that Appellant could have simply fled instead of shooting the victims. An in-

struction on retreat, according to Appellant, was necessary to counter the inference that Appellant was under a duty to avoid, if at all possible, the altercation with the victims.

In *Gibson v. Commonwealth*, 237 Ky. 33, 34 S.W.2d 936 (1936), the High Court stated: "[I]t is the tradition that a Kentuckian never runs. He does not have to." As professors Lawson and Fortune note, "[a] proposal by the drafters of the Kentucky Penal Code to change this rule was rejected by the General Assembly and the right of a defender to stand his ground against aggression was left intact." Robert G. Lawson & William H. Fortune, *Kentucky Criminal Law* § 4–2(d)(2) (1998) (footnotes omitted).

■ Despite the defiant attitude toward retreat exhibited by the *Gibson* opinion, Kentucky decisions have generally not adhered to such an absolute interpretation of the "no duty to retreat rule," nor did our predecessor court require jury instructions describing the same. For example, in *Bush v. Commonwealth*, 335 S.W.2d 324 (Ky.1960), the Court of Appeals found no error in the failure to give an instruction on retreat, particularly since the jury was otherwise fully instructed on self-defense. "[A]n instruction on self-defense should be in the usual form, leaving the question to be determined by the jury in the light of all the facts and circumstances of the case, rather than in the light of certain particular facts." *Id.* at 326. *Accord, Crawford v. Commonwealth*, 281 Ky. 557, 136 S.W.2d 754 (1940); *Greer v. Commonwealth*, 164 Ky. 396, 175 S.W. 665 (1915); *Connor v. Commonwealth*, 118 Ky. 497, 81 S.W. 259 (1904). *See also* James M. Roberson, *New Kentucky Criminal Law and Procedure* § 313 (2d ed.1927) (stating that "the rule now is that whether the assailed should stand his ground or give back is a question for the jury, and that he may properly

follow that course which is apparently necessary to save himself from death or great bodily harm").

■ Appellant argues that when the jury is correctly instructed on the law of self-defense, it should be clear from the instructions that the defendant has no duty to retreat. Furthermore, although some jurisdictions require specific jury instructions detailing a defendant's right to stand his or her ground when the facts of the case instead suggest a duty to withdraw, *see Cassels v. State*, 92 P.3d 951 (Colo. 2004); *McDonald v. State*, 717 So.2d 715 (Miss.1998); *People v. Redmond*, 150 Wash.2d 489, 78 P.3d 1001 (2003), other jurisdictions, like Kentucky, follow the principle "that when the trial court adequately instructs on self-defense, it need not also give a no duty to retreat instruction." *State v. Ottman*, 144 Ariz. 560, 562, 698 P.2d 1279, 1281 (1985). *Accord, State v. Brown*, 414 So.2d 726 (La.1982).

## II. Victim Background Evidence

During the guilt phase of trial, the mothers of each victim briefly described their sons to the jury. The jury learned such information as the victims' dates of birth, the number and sex of their siblings, and the fact that one victim had a nine-year-old son. One mother softly cried and sniffled as she spoke. Each mother concluded by displaying a single photograph of her son for the jury. Altogether, the combined testimony of both mothers, including the exhibition of photographs, took slightly more than three minutes to complete.

■ Appellant argues that the mothers' testimony had no purpose other than to arouse the jurors' emotions or to evoke sympathy for the victims. Recognizing that our holding in *McQueen v. Commonwealth*, 669 S.W.2d 519 (Ky.1984), *cert. denied*, 469 U.S. 893, 105 S.Ct. 269, 83

L.Ed.2d 205 (1984), permits at least a measure of such testimony during the guilt phase of trial, Appellant asks this Court to overrule that oft-cited decision and relegate *all* victim background evidence to the sentencing phase of the trial. We decline.

As Appellant notes, *McQueen* was decided during a time when bifurcated trials were the exception rather than the norm. Appellant contends that trial courts then were not accustomed to "discretely segregat[ing] sentencing information out of the guilt phase of the trial." Notwithstanding the changes rendered by the now-common bifurcation of trials into separate guilt and innocence phases, the lessons of *McQueen* are still applicable today. As stated in *Bowling v. Commonwealth*, 942 S.W.2d 293 (Ky.1997):

> A murder victim can be identified as more than a naked statistic, and statements identifying the victims as individual human beings with personalities and activities does not unduly prejudice the defendant or inflame the jury. Just as the jury visually observes the appellant in the courtroom, the jury may receive an adequate word description of the victim as long as the victim is not glorified or enlarged.

*Id.* at 302–03 (citing *McQueen* ).

As an alternative, Appellant argues that victim impact evidence should be excluded as irrelevant under the Kentucky Rules of Evidence. KRE 402 provides that "[a]ll relevant evidence is admissible." Appellant overlooks that this Court has recognized "that a certain amount of background evidence regarding the victim is *relevant* to understanding the nature of the crime." *Campbell v. Commonwealth*, 788 S.W.2d 260, 264 (Ky.1990), *citing Sanborn v. Commonwealth*, 754 S.W.2d 534, 542 (Ky.1988) (emphasis added).

Of course, victim impact evidence does carry the potential to "inflame the jury," and a trial court must carefully balance the probative value of such evidence against prejudicial concerns. KRE 403; *Clark v. Commonwealth*, 833 S.W.2d 793, 797 (Ky.1991). Here, however, we find Appellant's allegations wholly without merit. The brief display of the victims' life portraits, and the reserved testimony by each of their mothers, was neither excessive nor overly emotional. We therefore find no error in the introduction of this evidence.

### III. Challenge for Cause

During individual *voir dire*, Juror 40 revealed prior traumatic events in her life that she believed would likely shape her views on the appropriate penalty for Appellant's alleged crimes. Specifically, Juror 40 informed the trial court of her experiences as a victim of domestic violence, and of the loss of a loved one through an accident. When asked if these events would affect her decision in this case, Juror 40 stated: "I honestly can't answer that, as to whether it has any bearing as to how I feel about another person." Defense counsel then asked if this meant the juror would now want to give the death penalty if someone killed another person. Juror 40 replied: "I feel like it might create some prejudice. I'm not saying it would cause me to give him the death penalty. But it does create prejudice, though."

The trial court denied Appellant's motion to strike Juror 40 for cause. Appellant not only claims this ruling was in error, but citing *Thomas v. Commonwealth*, 864 S.W.2d 252 (Ky.1993), Appellant asserts that because he was forced to strike her with one of his own challenges, the trial court's ruling denied him his full complement of preemptory challenges.

The decision of whether or not to remove a juror for cause rests within the sound discretion of the trial court. *Mills v. Commonwealth,* 996 S.W.2d 473 (Ky.1999), *Foley v. Commonwealth,* 953 S.W.2d 924 (Ky.1997). In exercising this discretion, the trial court must keep in mind that a defendant is entitled to an impartial jury that can fairly consider the full range of penalties. *Woodall v. Commonwealth,* 63 S.W.3d 104 (Ky.2001). A defendant, however, is not guaranteed that a jury be comprised of individuals devoid of life experiences—life experiences which may shape that juror's views regarding sentencing. *See generally, Grooms v. Commonwealth,* 756 S.W.2d 131 (Ky.1988).

Simply because Juror 40 used the word "prejudice" in her replies does not necessarily mean she could not fully and fairly consider the evidence at trial. Instead of connoting an inflexible stance, the phrase "it might create some prejudice," as used by Juror 40, may have simply meant her views toward criminal punishment had changed following her personal experiences. The trial judge asked Juror 40 whether she could consider the full range of penalties, to which she affirmatively replied. Since the trial judge was in the best position to evaluate Juror 40's responses, and because her responses during *voir dire* can reasonably be considered innocuous, we find no error in this matter.

## IV. Unpreserved Errors

Appellant raises two unpreserved claims of error in his appeal. First, Appellant complains the trial court failed to instruct the jury on reasonable doubt as to the degree of the offense, when extreme emotional disturbance is claimed as a mitigating factor. In *Carwile v. Commonwealth,* 656 S.W.2d 722, 724 (Ky.1983), we noted that RCr 9.56 no longer mandates such an instruction. However, our decisions have not been uniform on this issue. *See Edmonds v. Commonwealth,* 586 S.W.2d 24, 27 (Ky.1979), *overruled on other grounds, Wellman v. Commonwealth,* 694 S.W.2d 696 (Ky.1985) (requiring the instruction); *Holbrook v. Commonwealth,* 813 S.W.2d 811 (Ky.1991), *overruled on other grounds, Elliott v. Commonwealth,* 976 S.W.2d 416 (Ky.1998). *See also* 1 Cooper, *Kentucky Instructions to Juries* § 2.03 (1999).

More recently, in *Hager, supra,* we included such an instruction among our "Specimen Recommended Instructions." 41 S.W.3d at 847. Although we do not believe omission of this instruction, when not requested, rises to the level of palpable error, we do adhere to this recent case, and if requested on retrial, this instruction should be submitted to the jury.

As a final matter, Appellant alleges that the prosecutor engaged in misconduct during closing arguments. More precisely, Appellant complains that the prosecutor extolled the jury not to convict Appellant of manslaughter, because such a crime is equivalent to burglary or assault. Although we decline to further address this issue because it was not properly preserved, we note that "sentencing issues must not be raised prior to the penalty phase of trial as a means to impermissibly influence the jury to convict based on the desired penalty rather than on the elements of each given offense." *Norton v. Commonwealth,* 37 S.W.3d 750, 753 (Ky. 2001).

For the reasons set forth in this opinion, the judgment of conviction and sentence imposed upon Appellant are reversed. This case is remanded to the Nelson Circuit Court for a new trial at which, if the evidence be the same, Appellant shall be entitled to an instruction on the defense of self-protection.

LAMBERT, C.J., COOPER, GRAVES, JOHNSTONE, and SCOTT, J.J., concur.

WINTERSHEIMER, J., dissents in a separate opinion in which KELLER, J., joins.

Dissenting opinion by Justice WINTERSHEIMER.

I must respectfully dissent from the majority opinion because the trial judge did not err when he declined to instruct on self-defense because there was no evidence to show that the use of deadly physical force against two unarmed individuals was justifiable.

Hilbert argues that the trial judge committed error when he refused to instruct the jury on self-defense because he did not take the stand to testify. He conveniently ignores the fact that there was no evidence presented to the jury to justify the use of deadly physical force under the facts of this case.

The trial judge noted that in this case all that happened was that Hilbert had been thrown out of the house trailer. Thus, because there was no evidence to demonstrate what Hilbert believed, it was necessary for him to testify and tell the jury what he did believe.

Hilbert complains that the fact that he had been mugged seven years previously in an unrelated incident was sufficient to demonstrate that he could have believed that he was in danger of death or serious physical injury. Such evidence only indicated that Hilbert may have been cautious and concerned about being mugged and that he began to carry a gun.

In this case, one of the female witnesses asked Hilbert if it was alright if she and her girlfriend brought two men home with them. She testified that Hilbert exhibited no fear and that he did not seem to care. It is clear that Hilbert only began to care when he believed that he would be excluded from the party in the mobile home and that the two victims would be alone with the two women. If Hilbert had been pushed outside the trailer, he still could have left the scene or called police. Instead, he chose to shoot and kill the first victim at point blank range, and then enter the trailer and shoot the second victim twice and kill him. Hilbert's intention was to get back into the trailer and not to defend himself.

The facts here do not support a jury instruction in order to justify the use of deadly physical force. There was no evidence of an altercation and the evidence indicated that both of the victims were unarmed. There was no evidence that would permit even a subjective belief that he was facing death or serious physical injury. The defendant was not forced to choose between testifying and foregoing a valid defense of self-protection. A defendant may not have to testify in order to be entitled to a self-defense instruction, but he still has to introduce some evidence which allows a reasonable inference that he had a subjective belief that deadly physical force was justified. Such is not the case here.

I would affirm the conviction in all respects.

KELLER, J., joins this dissenting opinion.