Larry AULT, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–1008–CR–492.

Court of Appeals of Indiana.

June 2, 2011.

Transfer Denied Sept. 9, 2011.

Matthew D. Anglemeyer, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, James E. Porter, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Following a jury trial, Appellant–Defendant Larry Ault was convicted of Murder, a felony,[1] and sentenced to fifty-five years in the Department of Correction. Upon appeal, Ault claims that the trial court abused its discretion in denying him a jury instruction on self-defense, forcing him to testify in violation of his Fifth Amendment rights. Concluding that there was sufficient evidence, without Ault's testimony, to support a jury instruction on self-defense, we reverse and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

Around noon on December 27, 2009, Ault was alone in the backyard of his home working on his truck when Andrew Parrish and Donna Choate arrived. Parrish, who was driving himself and Choate in a truck, accessed Ault's home through an alleyway and pulled into Ault's backyard. Parrish stopped his truck a few feet from Ault's truck, facing it. According to Choate, she and Parrish had arrived at Ault's home to collect money Ault allegedly owed Parrish's friend for a radio Ault had purchased.

Parrish stepped out of the truck, leaving the driver's side door open, approached Ault at the driver's side door of his vehicle, and spoke with him. The conversation became heated, with Parrish yelling at Ault, face-to-face, that he would "whip [his] a* * " if Ault did not pay him. Tr. p. 71. Choate stepped out of the truck, stood between the men, and pushed them apart. After Choate separated the men, she succeeded in pushing Parrish a short distance toward his truck, during which time Parrish continued to yell at Ault that he would "whip [his] a* *." Tr. p. 73. Parrish

claimed he would not leave until Ault gave him either his money or the radio. Ault responded by saying that Parrish "wasn't going to come over to his house and talk to him like that[.]" Tr. p. 73. Parrish and Ault began fighting again, more intensely. Choate pushed them apart a second time. Choate dragged Parrish by his jacket toward their truck, where Parrish opened the truck's side door, took off his coat, and threw it inside. Parrish, who was yelling, then called Ault a "p* * *y," and threatened to "beat his a* * now." Tr. p. 77. As Parrish shouted, Choate turned to see Ault holding a gun. Seconds later, Ault shot Parrish in the head.

Parrish immediately fell to the ground. Choate called 911. Within a short time, Ault placed snow from the ground on Parrish's head wound, which helped slow the blood flow. In addition, Ault picked Parrish up and dragged him over to a fence to place him in an upright position. Parrish later died of his injuries. No gun was ever found.

On December 29, 2009, the State charged Ault with murder (Count I) and carrying a handgun without a license, enhanced to a Class C felony (Count II). On June 25, 2010, the State amended the charging information to exclude Count II, and on June 30, 2010, Count II was dismissed. The matter was tried to a jury on June 28–30, 2010.

During trial, at the close of the State's case, defense counsel moved for a judgment on the evidence, which the trial court denied. At that point, in a procedurally unusual preliminary conference on jury instructions, the trial court considered the permissibility of a self-defense jury instruction in the event that Ault did not testify. Observing that self-defense em-

1. Ind.Code § 35–42–1–1 (2009).

ployed both an objective and a subjective standard, the trial court concluded that the subjective standard could not be satisfied without evidence of Ault's "enunciation of his perception of what was going on." Tr. p. 353. Ault subsequently testified. Ault's testimony revealed, *inter alia,* that he had multiple prior felony convictions, including for burglary, theft, auto theft, and forgery.

The jury found Ault guilty of murder. The trial court entered judgment of conviction and sentenced him to fifty-five years in the Department of Correction. This appeal follows.

## DISCUSSION AND DECISION

■ Upon appeal, Ault challenges the trial court's conclusion, prior to Ault's testimony, that the record lacked evidence of self-defense to support giving a self-defense jury instruction. The manner of instructing a jury lies largely within the discretion of the trial court, and we will reverse only for an abuse of discretion. *Henson v. State,* 786 N.E.2d 274, 277 (Ind. 2003). "'In determining whether a trial court abused its discretion by declining to give a tendered instruction, we consider the following: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given.'" *Id.* (quoting *Lampkins v. State,* 778 N.E.2d 1248, 1253 (Ind.2002)).

■ A defendant in a criminal case is entitled to have the jury instructed on any theory of defense that has some foundation in the evidence. *Creager v. State,* 737 N.E.2d 771, 776 (Ind.Ct.App.2000), *trans. denied.* We apply this rule even if the evidence is weak and inconsistent so long as the evidence presented at trial has some probative value to support it. *See id.* Further, we recognize it is within the prov-

ince of the jury to determine whether the defendant's evidence was believable, unbelievable, or sufficient to warrant the use of force. *Id.*

■ Indiana Code section 35–41–3–2 (2009) provides as follows, in pertinent part, for self-defense:

(a) A person is justified in using reasonable force against another person to protect the person or a third person from what the person *reasonably believes* to be the imminent use of unlawful force. However, a person:

(1) is justified in using deadly force; and

(2) does not have a duty to retreat;

if the person *reasonably believes* that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

\*    \*    \*

(e) Notwithstanding subsections (a), (b), and (c), a person is not justified in using force if:

(1) the person is committing or is escaping after the commission of a crime;

(2) the person provokes unlawful action by another person with intent to cause bodily injury to the other person; or

(3) the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action.

(Emphases supplied). "The phrase 'reasonably believes,' as used in the Indiana

self-defense statute, requires both subjective belief that force was necessary to prevent serious bodily injury, and that such actual belief was one that a reasonable person would have under the circumstances." *Littler v. State*, 871 N.E.2d 276, 279 (Ind.2007).

In concluding that there was not evidence to support a self-defense instruction, the trial court stated as follows:

> [A] person is justified in using deadly force only if the person reasonably believes that the force is necessary to prevent serious bodily injury to the person or the third person in the commission of a forcible felony.... [T]o employ self-defense, a defendant must satisfy both an objective and subjective standard. He must have actually believed deadly force was necessary to protect himself and his belief must be one that a reasonable person would have held under the circumstances. In attempting to reconcile the right of the defense to have a jury instruction on any defense that has some foundation in the evidence and the rulings related specifically to self-defense, I have to conclude that in order to raise a defense, the defense has to raise that defense and in self-defense, since there is both an objective and subjective standard, there is no basis in the evidence, at this point, to find a subjective belief by the defendant that he felt justified in using deadly force. Arguably, there is evidence as to the objective standard based on discussions we have had in chambers with both counsel present. The fact of the verbal threats, the fact of the multiple verbal threats, the fact that the alleged victim had opened the back door and had taken off his jacket. There is some sort ... there is a minimal objective standard, perhaps, but I don't have anything in the evidence that provides any subjective belief on the part of the defendant that he felt that deadly force was necessary to protect himself or his curtilege. As a result, and I don't have any of these cases where I have a defendant raising self-defense or any other defense, without actually taking the stand or at least presenting evidence from this standpoint through third parties of the reasonableness of those actions. As a result, I am not going to give a self-defense instruction absent the defendant raising that defense and giving me some ability to rely on your Dayhoff [sic] and Harrington case,[2] where it says that even if evidence is weak and inconsistent, the defendant is entitled to an instruction.

Tr. pp. 351–52.

When asked by defense counsel whether this ruling meant that self-defense instructions were never available in cases where defendants did not testify, the court responded as follows:

> I can't answer that question. I think it is possible on a case by case basis. I don't know, but I can't answer that question, frankly, but I think in this case I have nothing besides voir dire questioning of the panel and opening statements, which are not evidence, where any mention of self-defense is given. I do not have in this case, I don't believe, and I may be wrong, a subjective basis for giving that instruction.

\* \* \*

> I would think that the defendant's belief that he needed to use deadly force to prevent serious bodily injury to himself or a third party could only come from his enunciation of his perception of what

---

**2.** *See Dayhuff v. State*, 545 N.E.2d 1100 (Ind. Ct.App.1989), *trans. denied; Harrington v.* *State*, 413 N.E.2d 622 (Ind.Ct.App.1980), *trans. denied.*

was going on. That is how I am looking at it.

Tr. pp. 353. The court further observed, What also pushes me to rule in that direction, in one of these cases and I guess I would have to look at them more carefully, there was the defendant had engaged in a fairly nasty physical fight and there were two witnesses to that fight, and from the witnesses' standpoint, they believed that the defendant was in a position to fear for his safety and the Court placed those third-party statements as objective corroboration of the defendant's statement that he was in fear. The Court did not find that the third-party statements went towards the subjective belief that this kind of force was necessary but only supported the defendant's own belief that deadly force was necessary.

Tr. p. 354.

■ In disputing the necessity of his testimony to establish the requisite evidence of subjective belief, Ault points to *Harrington v. State*, 413 N.E.2d 622, 624 (Ind.Ct.App.1980), *trans. denied.* In *Harrington*, this court observed, in evaluating jury instructions relating to the entrapment defense, that the defendant had presented no evidence. *Id.* The court further observed that any evidence of entrapment must come from the State's witnesses. *Id.* Ault points out that, like self-defense, the entrapment defense rests upon the defendant's state of mind. *Id.* at 625. Ault argues that if a defendant's state of mind may be established by the State's case-in-chief for entrapment purposes, it may similarly be established by the State's case-in-chief for self-defense purposes. Accordingly, Ault claims that the trial court erred in requiring him to testify to establish his state of mind.

Consistent with Ault's argument, inferences about an individual's subjective state of mind are routinely drawn from the circumstances, regardless of whether that individual provides personal insight into his actual state of mind. *See, e.g., Goodner v. State*, 685 N.E.2d 1058, 1062 (Ind.1997) ("Intent is a mental state, and the trier of fact must often infer its existence from surrounding circumstances when determining whether the requisite intent exists."); *Jernigan v. State*, 612 N.E.2d 609, 613 (Ind.Ct.App.1993), *trans. denied.* ("Because knowledge is a mental state of the actor, the trier of fact must resort to reasonable inferences based on the examination of the surrounding circumstances to reasonably infer its existence."); *see also, McClain v. State*, 675 N.E.2d 329, 331 (Ind.1996) (observing, with respect to Indiana Rule of Evidence 803(4) statements made for purposes of medical diagnosis, that declarant's subjective belief may be inferred from the circumstances).

While the precise issue at hand does not appear to have been raised in Indiana, other jurisdictions have concluded that a defendant's subjective state of mind may be inferred from the circumstances for purposes of establishing self-defense. In *Hilbert v. Commonwealth*, 162 S.W.3d 921, 924 (2005), the Kentucky Supreme Court addressed a similar challenge to a trial court's refusal to tender a self-defense jury instruction. Like in the instant case, the defendant in *Hilbert* had not testified and, in the trial court's view, had failed to establish his subjective belief that deadly force was necessary to protect himself.[3] *Id.*

---

**3.** While self-defense in Indiana has both an objective and a subjective component, self-defense in Kentucky has only a subjective component. In Kentucky, therefore, a person may use deadly physical force if he believes it is necessary to protect himself against death, serious physical injury, or other named harms. *See Hilbert*, 162 S.W.3d at 924. In

Noting that a criminal defendant was entitled to jury instructions on any defense supported by the evidence, the *Hilbert* court reversed, observing that a defendant need not testify in order to receive a self-defense instruction. *Id.* Although the evidence of self defense was not strong, the *Hilbert* court was satisfied that it was adequate to warrant a self-defense instruction. *Id.* at 925. This evidence included certain statements by the defendant to police that he had been in an altercation with the victims and that he did not know what to do when they "kept coming," as well as a welt on the defendant's head and certain past actions he had taken to arm himself against would-be attackers. *Id.* at 925.

Similarly, in *People v. Hoskins,* 403 Mich. 95, 267 N.W.2d 417, 418 (1978), the Michigan Supreme Court reversed a trial court's refusal to instruct a jury on self-defense when the defendant had refused to testify regarding his state of mind. Like in the instant case, the victim in *Hoskins* was seeking repayment of a debt owed by the defendant; shortly before the victim's shooting, he and the defendant had argued, with the victim threatening to "whip" the defendant; and the victim was seen advancing toward the defendant. *Id.* at 418–19. Observing that a defendant may show his state of mind by circumstantial evidence to establish that he acted in self-defense, the *Hoskins* court concluded that the above evidence was adequate to warrant a self-defense instruction, regardless of the defendant's failure to testify. *Id.* In the *Hoskins* court's view, requiring a defendant to testify to show his state of mind compromised his right to have the prosecutor prove beyond a reasonable doubt that he was not acting in self-defense. *Id.* at 419.

Here, the facts at trial established that Parrish had driven to Ault's house and was standing on his property; that Parrish was shouting, threatening Ault face-to-face with bodily injury; that Parrish had taken the additional action of removing his coat and throwing it inside his vehicle; and that upon removing his coat, Parrish had indicated that his attack on Ault would be "now." The trial court specifically found that these facts were adequate to establish the objective component of self-defense. Given the broad use in Indiana of circumstantial evidence to show an individual's state of mind, and in light of *Hilbert* and *Hoskins,* we must conclude that these facts were similarly adequate to support a reasonable inference regarding the subjective component of self-defense, namely that Ault *believed* deadly force was necessary to protect himself. We therefore conclude that the trial court abused its discretion in refusing to instruct the jury on self-defense without Ault's testimony.

Having found error in the trial court's refusal to instruct on self-defense without Ault's testimony, we need not address whether the trial court's requiring Ault to testify constitutes a Fifth Amendment violation. The State does not argue that there was harmless error in this case, and we cannot conclude that the denial of Ault's self-defense instruction on these facts was harmless.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

BAKER, J., and MAY, J., concur.

---

Indiana, a person must believe deadly physical force is necessary to prevent serious bodily injury, and such belief must be reasonable.