# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 14, 2019
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## FINAL

2017-SC-000622-MR DATE 10|31|19 JAF

WILLIAM TERRY JAMISON          APPELLANT

ON APPEAL FROM FULTON CIRCUIT COURT
V.      HONORABLE TIMOTHY A. LANGFORD, JUDGE
NO. 16-CR-00113

COMMONWEALTH OF KENTUCKY          APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

William "Terry" Jamison appeals as a matter of right from his murder conviction and twenty-year sentence of imprisonment.[1] On appeal, Jamison raises seven claims of error: (1) the prosecutor committed prosecutorial misconduct, (2) his Fifth Amendment right to remain silent was violated by the prosecution's repeated comments regarding Jamison's post-*Miranda* election not to comment at the scene, (3) the trial court should have allowed additional testimony that would have bolstered Jamison's self-defense theory, (4) his Sixth Amendment Confrontation Clause rights were violated, (5) the

---

[1] Ky. Const. § 110(2)(b).

Commonwealth failed to establish venue, (6) the jury instructions were improper, and (7) his right to a "presumption of innocence" was violated when a video was shown of him in handcuffs. Finding no reversible error, we affirm in all respects the sentence and judgment of the Fulton Circuit Court.

## I. **BACKGROUND**

In late September 2016, Jamison was driving on a highway when Mark Williams drove up on his bumper chasing him at speeds over 80 to 90 miles per hour. Jamison immediately reported the incident to the Lake County, Tennessee, Sheriff's Department. Even before the incident, the Jamison and Williams' families did not get along. On October 1, 2016, Jamison shot and killed Williams when Williams drove up on a tract of farmland where Jamison was working in Fulton County, Kentucky. No one witnessed the shooting. Jamison called 911 and reported "a guy [had] come up to kill [him]." When local law enforcement arrived, Jamison stated that "Mark Williams pulled in behind me, raised his hand with a piece of metal and said he was going to kill me. He's down here under his truck sir." After seeing Williams' body, Deputy Thomas read Jamison his *Miranda* rights and asked whether he would like to speak with officers. Jamison invoked his right to remain silent until he had spoken with an attorney. Deputy Thomas then handcuffed Jamison and took him to the Hickman Police Department.

Jamison was subsequently tried by a Fulton Circuit Court jury. The jury was instructed on murder, first-degree manslaughter, second-degree

2

manslaughter, reckless homicide, and the self-protection statute, KRS[2] 503.050, respectively. Jamison was convicted of murder, and the trial court imposed a punishment of twenty years' imprisonment. This appeal followed.

## II. **STANDARD OF REVIEW.**

Almost all the issues raised by Jamison were not preserved below. Therefore, to reverse, this Court must find palpable error. RCr[3] 10.26. In *Commonwealth v. Jones*, 283 S.W.3d 665 (Ky. 2009), the Kentucky Supreme Court discussed the palpable error rule of RCr 10.26, and stated

> An unpreserved error that is both palpable and prejudicial still does not justify relief unless the reviewing court further determines that it has resulted in a manifest injustice, unless, in other words, the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be "shocking or jurisprudentially intolerable."

283 S.W.3d at 668 (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006)). "A finding of palpable error must involve prejudice more egregious than that occurring in reversible error, ... and the error must have resulted in 'manifest injustice.'" *Webb*, 387 S.W.3d at 329 (quoting *Ernst v. Commonwealth*, 160 S.W.3d 744, 758 (Ky. 2005) (citing *Brock v. Commonwealth*, 947 S.W.2d 24, 28 (Ky. 1997))).

## III. **ANALYSIS.**

### A. **Prosecutorial Misconduct/Closing Argument.**

Jamison asserts that actions taken by the prosecution throughout trial amounted to prosecutorial misconduct and warrant reversal. These include (1)

---

[2] Kentucky Revised Statutes.
[3] Kentucky Rules of Criminal Procedure.

3

references in opening statement to Jamison's choice not to comment to police; (2) the prosecutor's conduct during cross-examination of Jamison; and (3) several statements made during closing argument. As a preface, we must note that "[u]npreserved claims of error cannot be resuscitated by labeling them cumulatively as prosecutorial misconduct." *Noakes v. Commonwealth*, 354 S.W.3d 116, 122 (Ky. 2011) (citation omitted). Accordingly, Jamison's waived Fifth Amendment claims, discussed *infra*, will not be reviewed under the guise of prosecutorial misconduct. However, even though no objection was made, we may still review statements made by the prosecution during closing argument, and the circumstances surrounding those statements, to determine whether the statements require reversal.

"Prosecutorial misconduct is '[a] prosecutor's improper or illegal act . . . involving an attempt to . . . persuade the jury to wrongly convict a defendant or assess an unjustified punishment.'" *Noakes*, 354 S.W.3d at 121 (quoting *Black's Law Dictionary* (9th ed. 2009)). We must first decide "if the misconduct is flagrant or if each of the following three conditions is satisfied: (1) proof of defendant's guilt is not overwhelming; (2) defense counsel objected; and (3) the trial court failed to cure the error with a sufficient admonishment to the jury." *Bowling v. Commonwealth*, 553 S.W.3d 231, 242 (Ky. 2018). Defense counsel did not object to any of the statements Jamison alleges constituted prosecutorial misconduct. Therefore, the misconduct must have been flagrant to warrant reversal. Four factors are used to determine whether misconduct is flagrant: "(1) whether the remarks tended to mislead the jury or to prejudice

4

the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Id.* at 243. If the conduct is deemed flagrant, this Court will reverse only if the statement resulted in manifest injustice. *Matheney v. Commonwealth,* 191 S.W.3d 599, 606–07 n.4 (Ky. 2006).

Jamison contends, and the Commonwealth acknowledges, that during closing the prosecutor misstated the law regarding the level of proof needed for self-defense. The prosecutor stated, "[t]hey have to prove, like I have to prove murder, beyond a reasonable doubt. They can't prove self-defense, ladies and gentleman. There's no facts there to support their allegation of self-protection."

We review this statement under the four "flagrancy" factors from *Bowling.* 553 S.W.3d at 243. First, we acknowledge that this statement was an inaccurate recitation of the law. A defendant's belief that self-defense is necessary does not equate to proof that such force is necessary "beyond a reasonable doubt." KRS 503.050. Although the prosecutor's statement here was misleading, that factor is not dispositive to our analysis.

We must also consider that this single comment by the prosecution was extremely isolated. It is critical to note that the actual instructions provided to the jury during deliberations contained a proper recitation of the relevant law concerning self-protection. In fact, after reading the instructions to the jury, the trial judge urged the jury to read them on their own once in the jury room. Also, after the misstatement of the law by the prosecutor, he subsequently picked up the correct instructions and re-read them to the jury on his own. As

5

such, it strains credulity to claim that the jury was influenced by the prosecutor's brief misstatement.

Third, the misstatement of law was not deliberately placed in front of the jury. As previously discussed, the prosecutor misspoke during closing argument. Nothing from the record indicates that the prosecutor intended to mislead the jury.

The jury was presented with arguably the best evidence in Jamison's favor—his own testimony. The jury was afforded the opportunity to consider the veracity of that testimony. We cannot conclude that the prosecutor's error here was flagrant. In that same vein, we cannot say that this misstatement of law was "shocking or jurisprudentially intolerable." *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006). Therefore, there was no palpable error.

Similarly, the prosecutor's comments during his opening statement concerning the "pure, cold, mean, [and] agonizing" nature of the crime were neither flagrant nor palpable. We recognize that prosecutors must be cautious in their words, as "[a]n attorney for the commonwealth should never forget his high position; should never forget it is his duty to protect the innocent just as much as it is his duty to prosecute the guilty." *Taulbee v. Commonwealth*, 438 S.W.2d 777, 779 (Ky. 1969) (quoting *Goff v. Commonwealth*, 44 S.W.2d 306, 308 (Ky. 1931)). However, it is also a prosecutor's duty to zealously and ethically advocate for the state's interests. "Great leeway is allowed to *both* counsel in a closing argument. It is just that – *an argument*. A prosecutor may comment on tactics, may comment on evidence, and may comment as to the falsity of a

6

defense position." *Slaughter v. Commonwealth*, 744 S.W.2d 407, 412 (Ky. 1987). We cannot say here that the prosecutor's characterization of the evidence went beyond advocacy into flagrant misconduct or palpable error.

## B. Fifth Amendment Challenge.

Before trial, defense counsel became worried about what the jury might think if it learned that Jamison did not give a statement to police. The trial court assured counsel that if it became an issue, it would admonish the jury. The prosecutor stated that he only intended to demonstrate that Jamison did not give a statement to police, and nothing further. When the trial court asked if defense counsel wanted an admonition if the issue arose, defense counsel stated, "I think it's in my client's best interest to [let the jury know about Jamison not giving a statement]." Later in the pre-trial hearing, regarding the same issue, the trial court stated:

Trial Court:          Are you going to acknowledge [that Jamison did not give a statement]?

Defense Counsel: Yes.

    . . . .

Trial Court:          Alright, so it sounds like a non-issue at this point.

Defense Counsel: Right.

Trial Court:          If it develops into an issue, gentlemen, bring it to my attention and I'll rule accordingly.

Defense Counsel: Okay.

During trial, Jamison's refusal to give a statement at the scene turned into a focal point for the prosecution. On eight separate instances, the

7

prosecutor stated or elicited a statement from a witness regarding the lack of a statement by Jamison; specifically, the prosecutor elicited testimony from law enforcement officers that the first thing a police officer would do if he was involved in a shooting would be to give a statement. These statements and elicited responses occurred at every stage of trial; once during opening argument, four times during the Commonwealth's case in chief, once on cross-examination of Jamison, and twice during closing argument.

During his opening statement the prosecutor stated, "We don't know what happened [to the trailer hitch] because he declined to comment to police."

During re-direct of Officer Joey Adams:

| Commonwealth: | He talked to you about an officer shooting, which has absolutely nothing to do with this case. But, the fact of the matter is, what's the first thing that happens when an officer is involved in a shooting? Does he give a statement? |
|---|---|
| Sgt. Adams: | Yes. I gave a statement to my lieutenant at the time. |
| Commonwealth: | So you gave a statement? |
| Sgt. Adams: | Explaining what happened yes. |

During direct examination of lead Detective Hamby:

| Commonwealth: | Were you able to talk to [Jamison] at any time? |
|---|---|
| Det. Hamby: | I did attempt to talk to him later in the evening, but not immediately, no. |
| Commonwealth: | Did you receive any information when you talked to [Jamison]? |
| Det. Hamby: | No, he chose not to make a statement. |

On re-direct of Detective Hamby:

Commonwealth: What is the first thing that happens when an officer is involved in a shooting?

Det. Hamby: They are typically interviewed.

Commonwealth: They give a statement about what happened is that what you are saying?

Det. Hamby: That's correct.

Commonwealth: The very first thing?

Det. Hamby: In probably 99% of the cases, yes.

On cross-examination of Jamison:

Commonwealth: Why did you need time before you made your statement?

Jamison: Sir, my mind wasn't clear and I was scared.

Commonwealth: Of Deputy Thomas?

Jamison: No, just from the incident.

Commonwealth: But you didn't give a statement to Deputy Thomas of what happened?

Jamison: They read me my rights, and told me to I had the right . . .

Commonwealth: So, you exercised your right not to say anything?

Jamison: Yes sir, I remained silent, yes sir.

Commonwealth: After you shot a man down in cold blood.

Jamison: No sir.

Commonwealth: Nothing further.

During closing argument, the prosecution drew an analogy between what law enforcement officers do and what Jamison did not do after involvement in a shooting:

9

Commonwealth:    What is the first thing an officer is required to do [when involved in a shooting]? Give a statement. We didn't have a statement here. So, Det. Hamby had to go on what information he had.

And finally, later in closing:

Commonwealth:    And then he met Deputy Thomas. Deputy Thomas read him his rights, and he declined to talk any further, and he had that right. Cory Hamby began his investigation on what he had, what information he had that night.

Throughout the entire trial, defense counsel never objected to the prosecutor's questions, statements, or elicited testimony regarding Jamison's refusal to give a statement. Defense counsel also allowed the Commonwealth to play a body cam video of Jamison being read his *Miranda* rights, asking for an attorney, and being placed in handcuffs. Furthermore, defense counsel raised Jamison's refusal to give a statement on his own during his opening statement, during cross-examination of the Commonwealth's main witness, and during direct examination of Jamison.

Defense counsel did not object to any statements made by the prosecution regarding Jamison's election to speak with an attorney prior to giving a statement. In his brief, Jamison seeks palpable error review under RCr 10.26. The Commonwealth asserts that Jamison waived any review on appeal because of the above statements made by defense counsel during pre-trial hearings and the lack of objection during trial. Indeed, when not waived by lack of objection, comments such as those made by the Commonwealth have been held to have eviscerated a defendant's Fifth Amendment rights, requiring reversal. *See, e.g., Doyle v. Ohio*, 426 U.S. 610, 618 (1976).

10

However, even a constitutional right such as this may be waived if trial counsel failed to object. *West v. Commonwealth*, 780 S.W.2d 600, 602 (Ky. 1989). In *West*, this Court held:

> When a defendant's attorney is aware of an issue and elects to raise no objection, the attorney's failure to object may constitute a waiver of an error having constitutional implications. In the absence of exceptional circumstances, a defendant is bound by the trial strategy adopted by his counsel even if made without prior consultation with the defendant. The defendant's counsel cannot deliberately forego making an objection to a curable trial defect when he is aware of the basis for an objection.

*Id.* (citation omitted). *West* further held that "nothing contained in RCr 10.26 precludes the waiver of palpable error or even waiver of a constitutional right."[4]

*Id.*

Jamison's defense counsel clearly knew of his client's Fifth Amendment rights and determined that his strategy at trial was to acknowledge Jamison's constitutional right to not give a statement to police. Regardless of our thoughts concerning this strategy, Jamison's defense counsel knew of the curable trial defect—Jamison's right to silence—and deliberately chose not to object each time the prosecution raised the issue. Therefore, the issue was waived.

## C. Additional Self-Defense Testimony.

During trial, the trial court sustained objections to the testimony of three separate defense witnesses. Jamison now asserts that these witnesses should

---

[4] While more recent cases, such as *Jones*, 283 S.W.3d 665, and *Martin*, 207 S.W.3d 1, question whether palpable error is subject to waiver, a constitutional right may certainly be knowingly waived.

11

have been allowed to be heard as they had relevant testimony to give regarding the "state of mind" of the defendant at the time of the shooting. In his brief, Jamison mentions all three defense witnesses, but only raises claims of error in his argument section as to two of them. Further, this Court will review only one of the two remaining claims of error because defense counsel waived appellate review as to one witness when he proceeded to question the witness down a different path after a "leading question" objection.[5]

We review a trial court's evidentiary rulings for an abuse of discretion. *Walker v. Commonwealth*, 288 S.W.3d 729, 739 (Ky. 2009). "Under this standard, a trial court's evidentiary ruling will not be disturbed unless its ruling was arbitrary, unreasonable, unfair, or unsupported by sound legal principals." *Id.* (citation omitted). Additionally, even if an evidentiary error has been committed, harmless error exists if we can say "with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009); RCr 9.24.

At trial, Jamison attempted to call as a witness a Tennessee deputy sheriff who would have testified that Jameson had related to him the information about the driving incident that occurred between Jamison and Williams days before the shooting. The Commonwealth objected to this testimony on hearsay grounds; the trial court sustained the objection but

---

[5] Jamison asserts in his original brief that it was a "hearsay" objection, but it was actually a "leading question" objection. Had trial counsel wanted to elicit the information Jamison now brings forth on review, he could have simply reworded his question to the proper direct examination form.

12

allowed the defense the opportunity to recall the deputy at a later time after Jamison testified. The deputy was never recalled.

Hearsay is an out of court statement being offered for the truth of the matter asserted. KRE[6] 801(c).

> In self-defense cases, fear by the defendant of the victim at the time of their encounter is an element of the defense and can be proved by evidence of violent acts of the victim, threats by the victim, and even hearsay statements about acts and threats, if such evidence is accompanied by proof that the defendant knew of such acts, threats, or statements at the time of the encounter.

Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 2.20 at 112 (5th ed. 2013). The deputy's testimony would not have been hearsay because it would have been offered to show Jamison's state of mind—his fear of Williams—prior to the shooting. Jamison was not required to raise self-defense first by taking the stand. Therefore, it was an abuse of discretion for the trial court to sustain the objection to Deputy Bargery's testimony.

In the context of this trial, however, this error was harmless. Jamison did eventually testify and discussed, at length, the incident involving Williams the week before. The deputy's testimony would have, therefore, added nothing but cumulative evidence to the case before the jury. Given that the defense also made no effort to recall the witness, we find that any error here was either waived or harmless.

---

[6] Kentucky Rules of Evidence.

## D. Confrontation Clause.

Jamison also argues that his Sixth Amendment Confrontation Clause rights were violated when Detective Hamby testified that Jamison's defense counsel told him that Jamison had stepped onto the bumper to look inside the truck bed after shooting Williams. At trial, defense counsel asked to be heard in chambers, and requested a mistrial but did not further request a ruling when Det. Hamby clarified his testimony. Defense counsel then told the trial court that he was not asking for an admonition, but just wanted to review the testimony, "because obviously I can't be a witness in this case." The matter was not addressed again during trial. "It is the duty of one who moves the trial court for relief to insist upon a ruling, and a failure to do so is regarded as a waiver." *Dillard v. Commonwealth*, 995 S.W.2d 366, 371 (Ky. 1999). Defense counsel did not insist upon a ruling here.

Additionally, there is nothing particularly incriminating or inculpatory by the statement that Jamison simply looked into the truck bed of the victim after the shooting. Jamison himself spoke of this same fact during his testimony. Thus, once again, the issue was waived; clearly Jamison felt the fact was relevant to his defense. Therefore, there is nothing for us to review. To the extent that this issue was not entirely waived, it is harmless beyond a reasonable doubt. *Sparkman v. Commonwealth*, 250 S.W.3d 667 (Ky. 2008). There was nothing incriminating that would have negatively influenced Jamison's defense.

14

## E. Establishment of Venue.

This issue arises because none of the Commonwealth's witnesses ever stated that the shooting occurred in Fulton County, Kentucky. Jamison argues that because "Kentucky" was never used when referring to Fulton County, venue was not established, and thus reversal is required.

In criminal cases, the prosecution must establish that the crime was committed in the county where it is being prosecuted. *Commonwealth v. Cheeks,* 698 S.W.2d 832, 835 (Ky. 1985). However, direct evidence is not required to prove "that the crime occurred in the county of its prosecution, but the fact may be inferred from evidence and circumstances which would allow the jury to infer where the crime was committed." *Id.*

At trial, ample evidence was presented that the shooting took place in Fulton County, Kentucky. First, Det. Hamby stated that the shooting took place in Fulton County. Second, Dep. Thomas testified that he responded to an area near Midway Baptist Church in the Lower Bottom area of Fulton County, and that a photograph of the scene of the crime was taken two or three miles away from the Tennessee line. Furthermore, although South Fulton, Tennessee is located just across the Kentucky-Tennessee line, no Fulton County, Tennessee exists. Therefore, venue was sufficiently established from the testimony given by the Commonwealth's witnesses at trial.

## F. Jury Instructions.

Jamison claims multiple errors in the jury instructions given at trial. Jamison first complains that the instruction titled "Reasonable Doubt" was not

15

adequate to define reasonable doubt, the indictment process, the presumption of innocence, and self-protection. Notably, the "Reasonable Doubt" instruction given at trial is an exact replica of the model "Presumption of Innocence" instruction, and the "Self-Protection" instruction given virtually mirrors its model instruction. Cooper and Cetrulo, *Kentucky Instructions to Juries, Criminal* § 11.07 (6th ed. 2017). Therefore, these instructions are properly given to the jury regarding the aforementioned issues. Additionally, it appears from Jamison's proffered instructions, he did not include an alternate reasonable doubt or indictment instruction.

Jamison's imperfect self-defense argument was preserved via the proffer of alternative instructions, but no error existed in the imperfect self-defense instructions. The final instructions essentially mirrored those set out by this Court as proper in *Commonwealth v. Hager*, 41 S.W.3d 828, 846–47 (Ky. 2001). Therefore, the trial court gave a proper instruction regarding imperfect self-defense and no error occurred in the context of this case.

Jamison also argues that the first-degree manslaughter instruction was improper because it did not include the first-degree manslaughter model instruction section regarding intent to injure, but not kill the victim. Cooper and Cetrulo, § 11.07. However, Jamison did not tender an instruction on first-degree manslaughter in his proffered jury instructions; he included instructions on murder, second-degree manslaughter, and reckless homicide, but not first-degree manslaughter. "No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and

16

adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection." RCr 9.54(2). Jamison failed to preserve any error as to the first-degree manslaughter instruction. He did not object to the instruction. It is arguable that the evidence did not even warrant an instruction on first-degree manslaughter with intent to injure but not kill. We find no palpable error here warranting reversal.

### G. Handcuff Video.

Finally, Jamison argues that his "presumption of innocence" was violated when a video was shown during trial that included footage of him being handcuffed. However, at a bench conference prior to showing the video, defense counsel stated that he did not have any objection to the first "ten or twenty or thirty minutes" being shown. After the prosecution stopped playing the video, defense counsel continued to play additional portions of the same video. Accordingly, Jamison waived this issue through invited error. We have held that "invited errors that amount to a waiver, *i.e.*, invitations that reflect the party's knowing relinquishment of a right, are not subject to appellate review." *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 38 (Ky. 2011) (citation omitted). Any alleged error here was clearly invited by defense counsel. Furthermore, even if not invited error, a video of a defendant being handcuffed, without more, is not error. *See Johnson*, 105 S.W.3d at 439 (upheld trial court decision to allow arrest video to be played for jury); *Edmonds v. Commonwealth*,

17

906 S.W.2d 343, 346–47 (Ky. 1995) (no palpable error when "dramatic footage of the persons arrested being handcuffed by police" was shown at trial). As defense counsel invited this error, it is not subject to our review on appeal.

## IV.   CONCLUSION.

For the foregoing reasons, we affirm the Fulton Circuit Court.

Minton, C.J.; Keller, Lambert and Wright, JJ., concur. VanMeter, J., dissents by separate opinion in which Hughes, J., joins.

VANMETER, J., DISSENTING: I respectfully dissent from the majority's opinion regarding whether the Commonwealth's Attorney's misstatement of law during closing argument amounted to prosecutorial misconduct. The majority places a heavy emphasis on the fact that the statement shifting the burden of proving self-defense to Jamison was "extremely isolated." Although the statement was isolated, its effects were not.

The defense's entire case rested on the theory that Jamison acted in self-defense. Jamison acknowledged that he shot and killed Williams but claimed that he had acted in self-defense. "Once evidence is introduced which justifies an instruction on self-protection . . . the Commonwealth has the burden to disprove it beyond a reasonable doubt, and its absence becomes an element of the offense." *Commonwealth v. Hager*, 41 S.W.3d 828, 833 n.1 (Ky. 2001). By making the above statement, the prosecution shifted the burden to Jamison to prove the claim of self-protection beyond a reasonable doubt, effectively erasing any burden from the Commonwealth besides the burden to prove Jamison shot and killed Williams, something he never disputed. Accordingly, although a

18

single isolated comment, it changed the entire trial by shifting the burden from the Commonwealth to the defendant, effectively inserting "beyond a reasonable doubt" into every shred of self-defense evidence presented by Jamison.

Furthermore, the majority's insistence that the chief prosecutor of a four-county circuit simply "misspoke" when he stated "[t]hey have to prove, like I have to prove murder, beyond a reasonable doubt," strains credulity. The prosecutor is a seasoned Commonwealth's Attorney, practicing criminal law on a daily basis. No law in this Commonwealth states that the defense must prove self-protection beyond a reasonable doubt. The "beyond a reasonable doubt" standard is a level of proof placed upon the Commonwealth, not upon the defendant. All a defendant must do to receive an instruction on self-defense is put on evidence that "raise[s] the issue[.]" *Hilbert v. Commonwealth*, 162 S.W.3d 921, 925 (Ky. 2005), *superseded by statute on other grounds*. And, all the evidence must do to warrant an instruction on self-defense is "justify a reasonable doubt concerning the defendant's guilt." *Id.* Although the final decision is left to the jury, a gross misstatement of the burden of proof of this nature, after jury instructions have been read, taints an entire trial.

Finally, the majority conveniently skips over the fourth factor in the *Bowling* flagrancy analysis: "the strength of the evidence against the accused." 553 S.W.3d at 243. In some cases, the strength of the evidence may be enough to minimize the damage of a misstatement of law so as to not make it flagrant. However, the strength of the evidence against the accused in the present case was not overwhelming. Jamison admitted to shooting Williams, but no one

19

witnessed it. Further, evidence showed (1) a feud between the two farming families, (2) dangerous behavior by Williams towards Jamison just days prior to the crime, (3) testimony of similar dangerous behavior by Williams toward another farmer, (4) evidence that Williams drove up onto the land where Jamison was working alone, (5) discrepancies in the distance from which the shots were taken, and (6) testimony by Jamison that Williams, a much larger man than Jamison, held a trailer hitch above his head, screaming "I'm going to kill you" when he stepped out of his pickup. To refute this evidence, the prosecution chose a strategy that consisted of showing that (1) Williams' body was mostly under his truck, (2) Williams had a gun in his truck that he would have used if he had really wanted to kill Jamison, (3) continued attacks against Jamison's decision to remain silent, and (4) the irrelevant comparison that in an analogous situation a law enforcement officer would have given a statement. The evidence could not have been "overwhelming," as the prosecution's main strategy—commenting on Jamison's decision to stay silent—was clear reversible error had it not been waived by defense counsel. Consequently, as the evidence was not "overwhelming," the egregious misstatement of law was "flagrant" as defined by the four factors cited in *Bowling*. 553 S.W.3d at 242–43.

In addition, this misstatement of law resulted in a "manifest injustice" under RCr 10.26 because it violated Jamison's "substantial rights" by representing to the jury that Jamison must meet the highest burden of proof, beyond a reasonable doubt, to be acquitted by self-defense, when in fact the

20

Commonwealth had to disprove it beyond a reasonable doubt. *Hager*, 41 S.W.3d at 833. Although this Court has held that juries are presumed to follow jury instructions, *Johnson v. Commonwealth*, 105 S.W.3d 430, 436 (Ky. 2003), the misstatement here was so straightforward and prejudicial that the jury may have inferred it into the instructions and swayed its decision to convict in a case with less than overwhelming evidence. *See State v. Strommen*, 648 N.W.2d 681, 690 (Minn. 2002) ("While we note that in the final instructions the trial court properly instructed the jury on the state's burden of proof, we conclude that the misstatement, in the context of this trial, presented a source of confusion for the jury and may have played a role in the decision to convict[.]"). Based on the foregoing reasons, I respectfully dissent from the majority's opinion and hold the prosecutor's misstatement of law during closing argument to be reversible error entitling Jamison to a new trial.

Hughes, J., joins.

COUNSEL FOR APPELLANT:

Rickie A. Johnson
Charles S. Kelly, Sr.

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

John Paul Varo
Assistant Attorney General